**ESTATE OF Barbara L. REYNOLDS, Plaintiff–Appellee,**

v.

**Lynn MARTIN, Secretary of Labor, Defendant–Appellant.**

**No. 91–15237.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 1992.

Decided Feb. 9, 1993.

Jonathan R. Siegel, Dept. of Justice, Washington, DC, for appellant.

Lawrence J. King, King & Green, San Francisco, CA, for appellee.

Michael Selmi, Lawyers' Committee for Civil Rights Under Law, Washington, DC, for amicus curiae.

Before: FERGUSON, REINHARDT, and KOZINSKI, Circuit Judges.

FERGUSON, Circuit Judge:

The Secretary of Labor appeals the district court's award of pre- and postjudgment interest on damages awarded to Barbara Reynolds in her wrongful discharge suit under the Rehabilitation Act. We hold that the Civil Rights Act of 1991 entitles Reynolds to pre- and postjudgment interest on her award. Thus, we affirm.

BACKGROUND

Plaintiff-appellee Barbara Reynolds was an employee of the Department of Labor from July 1, 1979 until September 26, 1980, when she was discharged. After exhausting administrative remedies, Reynolds sued the Secretary of Labor in the district court, alleging violations of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.*, the Civil Service Reform Act, 5 U.S.C. § 1201 *et seq.*, and breach of contract. The district court granted summary judgment for the Secretary. Reynolds appealed, solely with regard to her Rehabilitation Act claim. On appeal, we reversed and remanded the case for trial. *See Reynolds v. Brock*, 815 F.2d 571 (9th Cir.1987).

Reynolds died while the case was pending on remand. The administrator of Reynolds' estate was substituted for her as plaintiff. The parties consented to trial before a magistrate without a jury. The court found that Reynolds' discharge violated the Rehabilitation Act. Citing the remedial provisions of the Act, the court awarded back pay, with prejudgment interest, and costs including attorney's fees. Judgment was entered accordingly. The judgment stated that Reynolds was also entitled to postjudgment interest under 28 U.S.C. § 1961.

The Secretary moved for an amendment of the judgment to eliminate the award of interest. The motion was denied. The district court determined that the interest provision of the Back Pay Act, 5 U.S.C. § 5596, applied to Reynolds' back pay award.

The parties entered into a settlement agreement that resolved all issues in the case except the issue of Reynolds' entitlement to interest on her back pay award. Thus, the only question remaining in the case is whether an employee of the United States found to be entitled to back pay under the Rehabilitation Act is entitled to an award of pre- or postjudgment interest on that back pay.

DISCUSSION

We review the district court's award of interest on Reynolds' back pay award in light of the Civil Rights Act of 1991, which became law after the district court entered its judgment in this case. We conclude that the Act applies to cases pending on its effective date and thereby entitles Reynolds to receive pre- and postjudgment interest on her back pay award under the Rehabilitation Act.

## Jurisdiction and Standard of Review

We have jurisdiction over this appeal under 28 U.S.C. § 1291. Whether Reynolds is entitled to interest on the back pay awarded by the district court is a question of law that we review de novo. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.1984) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## Civil Rights Act of 1991

The Civil Rights Act of 1991 ("Act" or "Civil Rights Act of 1991") was signed into law on November 21, 1991. *See* Pub.L. No. 102–166, 105 Stat. 1071 (1991). The Act was intended, in part, "to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination." Civil Rights Act of 1991, § 3(4). Among these decisions is *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986).

In *Shaw*, the Supreme Court held that prejudgment interest was not available against the federal government under Title VII. In enacting the Civil Rights Act of 1991, Congress amended Title VII to specify that federal employees are entitled to all of the remedies ordinarily available under Title VII, including payment of interest. Section 114(2) of the Act amends section 717 of the Civil Rights Act of 1964 (codified as amended at 42 U.S.C. § 2000e–16) to provide that "the same interest to compensate for delay in payment shall be available [to federal employees] as in cases involving nonpublic parties." Nonpublic parties are liable for pre- and postjudgment interest under 28 U.S.C. § 1961. Under the amended Act, the government is similarly liable because section 114(2) of the Act provides an express congressional waiver of the government's ordinary sovereign immunity from interest on judgments entered against it. *See, e.g., Hall v. Bolger*, 768 F.2d 1148, 1151–52 (9th Cir.1985) (holding that an express congressional waiver abrogates governmental immunity from postjudgment interest).

The remedial provisions of the Rehabilitation Act, 29 U.S.C. § 794a(a)(1), incorporate 42 U.S.C. § 2000e–16 by reference. Reynolds has successfully litigated a claim under the Rehabilitation Act. Hence, if the Civil Rights Act of 1991 applies to cases pending at its enactment, it entitles Reynolds to receive pre- and postjudgment interest on her back pay award under the Rehabilitation Act.

### A.

■ The Supreme Court has issued apparently conflicting opinions on whether—absent clear statutory direction regarding retroactivity—congressional enactments are to be presumed retroactive or only prospective in application. *Compare Bradley v. Richmond School Bd.*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) ("[A] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary."), *with Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) ("[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."). The Court has noted this "apparent tension," but it has stated unambiguously that where congressional intent is clear as to a statute's retroactive or prospective application, that intent governs. *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990); *see also Bradley*, 416 U.S. at 711, 94 S.Ct. at 2016; *Bowen*, 488 U.S. at 208, 109 S.Ct. at 471. Because we conclude that the plain language of the Act is conclusive, we need not choose between the *Bradley* and *Bowen* presumptions, nor need we attempt to reconcile the cases. *See, e.g., Baynes v. AT & T Technologies, Inc.*, 976 F.2d 1370 (11th Cir.1992); *Gersman v. Group Health Ass'n, Inc.*, 975 F.2d 886, 898–99 (D.C.Cir.1992) (holding that *Bradley* and *Bowen* are to be reconciled by distinguishing between the presumptive prospective application of substantive statutory

provisions and the presumptive retroactivity of remedial provisions.) Under either the *Bradley* or *Bowen* approach, when Congress' intent about retroactivity is clear from the statutory language, as in this case, that language controls judicial construction. *See Kaiser*, 494 U.S. at 835, 110 S.Ct. at 1575 (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)).

 Three provisions of the Civil Rights Act of 1991 explicitly address the statute's applicability to pending cases. Section 402 of the Act is entitled "Effective Date." Section 402(a) states: "Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." We have held that a statement that an act shall take effect upon enactment, on its own, does not necessarily dictate that the act applies retroactively to pending cases; however, we have considered such language relevant to our holding that a statute applied retroactively because we found that the language provided "some indication that [Congress] believed that application of its provisions was urgent." *In re Reynolds*, 726 F.2d 1420, 1423 (9th Cir.1984) (construing the Omnibus Budget Reconciliation Act of 1981). *See also Stender v. Lucky Stores, Inc.*, 780 F.Supp. 1302, 1304 (N.D.Cal.1992) (citing *In re Reynolds* in support of its holding that the plain language of the Civil Rights Act of 1991 mandates that the Act applies to pending cases).

Importantly, though, the language of section 402(a) goes beyond that at issue in *In re Reynolds*. Section 402(a) states as a general matter that the Act, as with the Omnibus Budget Reconciliation Act, is to "take effect upon enactment." That general language, however, is qualified by the clause "[e]xcept as otherwise specifically provided." A bedrock principle of statutory construction requires us to find meaning in this qualifying clause: "The cardinal principle of statutory construction is to save and not to destroy. It is our duty to give effect, if possible, to every clause and word of a statute, rather than to emascu-

late an entire section...." *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) (quotation omitted). "[I]t is the duty of the court to give significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose, and to give effect to the statute as a whole, and not render it partially or entirely void." *Bresgal v. Brock*, 843 F.2d 1163, 1166 (9th Cir.1987) (quoting *Matter of Borba*, 736 F.2d 1317, 1320 (9th Cir.1984)).

The qualifying clause of section 402(a), if it is to mean anything, must mean that the Act contains counterexamples that specifically provide for exceptions to the general rule enunciated elsewhere in section 402(a). The only provisions of the Act that can be read as specifically departing from the general rule are sections 402(b) and 109(c). As discussed below, those sections state that they are not to be applied retroactively. Thus, section 402(a), when read in light of the language of the Act taken as a whole, can only be read to establish a rule that the Act in general is to be applied retroactively. In other words, the potential ambiguity of the phrase "take effect upon enactment" disappears when construed *in pari materia* with the qualifying clause of section 402(a), and with sections 402(b) and 109(c).

We also hold that the language of sections 402(b) and 109(c), even when measured independently of section 402(a), compels us to find that the Act applies to pending cases. Section 402(b) provides: "Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983." The sole effect of this section is to prevent the provisions of the Act that overrule *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), from applying to the *Wards Cove* litigation itself, which is still pending in this circuit.

Section 109(c) is entitled "Application of Amendments" and states: "The Amendments made by this section shall not apply with respect to conduct occurring before

the date of the enactment of this Act." This section extends the protections of Title VII to United States citizens working overseas for American companies and thus overrules *EEOC v. Arabian American Oil Co.*, —— U.S. ——, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991).

Each of these provisions, stating that in specific instances the Act shall not apply to cases pending at its enactment, provides compelling evidence that Congress intended the Act in general to apply to such cases. " '[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir.1972)); *In re Salem Mortgage Co.*, 783 F.2d 626, 631 n. 14 (6th Cir.1986) (provision of Bankruptcy Amendments Act stating that a particular section shall not apply to pending cases implies that remaining provisions of the Act apply to pending cases); *accord Carlton v. BAWW, Inc.*, 751 F.2d 781, 787 n. 6 (5th Cir.1985).

■ Congress would have had no need to provide that the Act lacks force in ongoing litigation involving *Wards Cove* or American businesses overseas if it had not generally intended the Act to apply to pending cases. To hold, then, that the Act as a whole applies only prospectively would violate the fundamental "rule of statutory interpretation that no provision should be construed to be entirely redundant." *Kungys v. United States*, 485 U.S. 759, 778, 108 S.Ct. 1537, 1550, 99 L.Ed.2d 839 (1988); *see also Colautti v. Franklin*, 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979) (discussing the "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative"); *United States v. Handy*, 761 F.2d 1279, 1280 (9th Cir.1985) ("A statute should be construed so as to avoid making any word superfluous."); *Mackey v. Lanier Collection Agency & Serv.*, 486 U.S. 825, 837, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836 (1988); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979). We may not construe the Act so as to make Congress' words in sections 402(b) and 109(c) "mere surplusage." *United States v. Mehrmanesh*, 689 F.2d 822, 829 (9th Cir.1982). Hence, we conclude that Congress specifically provided that the Act operate only prospectively in two instances because it generally intended the Act, including section 114(2), to apply to cases pending at its enactment.[1]

We further note that our construction of the Act is buttressed by other statutory language in which Congress explicitly stated its goal in enacting the statute. In the introductory passages of the Act, Congress expressly stated that its legislation was motivated by a desire to reverse a number of Supreme Court decisions that had narrowly construed various employment discrimination laws. In section 2 of the Act, Congress expressed its "finding" that "the decision of the Supreme Court in *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), ha[d] weakened the scope and effectiveness of Federal civil rights protections," and in

---

**1.** Finally, we note that another provision of the Act, subsection 108(n)(2)(A), supports our conclusion that the statutory language requires that the Act be applied retroactively. Section 108 precludes certain collateral challenges to litigated or consent judgments involving claims of employment discrimination, overruling *Martin v. Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989). Subsection 108(n)(2)(A) specifies: "Nothing in this subsection shall be construed to alter the standards for intervention under rule 24 of the Federal Rules of Civil Procedure or apply to the rights of parties who have successfully intervened pursuant to such rule in the proceeding in which the parties intervened." The subsection's first clause serves to make clear that section 108 has no effect on the standards for intervention under Federal Rule of Civil Procedure 24; the subsection's second clause states that section 108 does not apply to the rights of parties who had successfully intervened in a case prior to the effective date of the Act. This second clause would be nonsensical unless the Act could otherwise be construed to apply retroactively to parties who had already intervened in a case prior to the Act's effective date.

section 3 it declared that among its purposes in passing the Act was its desire to "codify the concepts of 'business necessity' and 'job related' enunciated in ... Supreme Court decisions prior to *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989)" and to "respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination."[2]

Congress' expressed desire to undo the effects of recent Supreme Court decisions, and to restore civil rights law to its previous state, reinforces our belief that Congress intended the courts to apply the Act to cases presently before them. "Retroactive application of a statute is appropriate when Congress enacts a statute to clarify the Supreme Court's interpretation of previous legislation thereby returning the law to its previous posture." *Ayers v. Allain*, 893 F.2d 732, 754–55 (5th Cir.1990), *vacated on other grounds sub nom. United States v. Fordice*, —— U.S. ——, 112 S.Ct. 2727, 120 L.Ed.2d 575 (1992).[3] Indeed, to hold otherwise with respect to this Act would lead to incongruous results. In the eight Supreme Court cases overruled by the Act, the discriminatory conduct at issue was on average nearly nine years old by the time the case reached the Court, and four of those cases were remanded for further proceedings.[4] We would seriously undermine

---

**2.** Section 101 of the Act reverses limits on the scope of 42 U.S.C. § 1981 created by *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Section 101 defines "make and enforce contracts" as "the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

Section 105 overrules *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), which held that an employer bears only the burden of production, not the burden of persuasion, as to its business necessity. Under section 105, the employer bears the burden of production and persuasion on this point.

Section 107 modifies the Supreme Court's holding in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), which held that an employer could avoid liability for intentional discrimination in "mixed motive" cases if the employer could demonstrate that the same action would have been taken in the absence of the discriminatory motive. Section 107 states that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."

Section 108 overrules *Martin v. Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), by prohibiting certain challenges to consent decrees by individuals who had a reasonable opportunity to object to the decree or whose interests were adequately represented by another party.

Section 109 overrules *EEOC v. Arabian American Oil Co.*, —— U.S. ——, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991), by extending the protections of Title VII to United States citizens working overseas for American companies.

Section 112 reverses *Lorance v. AT & T Technologies, Inc.*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), which held that the period for challenging an allegedly discriminatory seniority rule begins when the rule is adopted. Section 112 allows employees to challenge a seniority system "when the seniority system is adopted, when an individual becomes subject to the seniority system, or when a person aggrieved is injured by the application of the seniority system or provision of the system."

Section 113 reverses *West Virginia University Hosps., Inc. v. Casey*, —— U.S. ——, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), by permitting recovery of expert fees as part of the attorney's fee award.

Section 114, at issue in this case, overrules *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), by providing that federal employees are entitled to all of the remedies available under Title VII, including interest.

**3.** In *Ayers*, the court considered the retroactivity of the Civil Rights Restoration Act of 1987. The Act's explicitly stated purpose was to overturn the Supreme Court's decision in *Grove City College v. Bell*, 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984), which limited the scope of Title IX. The Act was silent as to whether it was to be applied retroactively. The court held that the Act should apply to cases which were pending at the time of its enactment. *Ayers*, 893 F.2d at 754–56. *See also Lussier v. Dugger*, 904 F.2d 661, 665–66 (11th Cir.1990); *Stender*, 780 F.Supp. at 1306.

**4.** The actual average was 8.7 years. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (plaintiff fired in 1982); *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989) (case filed in 1974); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775,

Congress' stated intent were we to hold that the decisions it repudiated would live on in the federal courts for another nine years.

In sum, we give proper effect to the language of the Civil Rights Act of 1991 by applying it to cases that were pending at the time of its enactment. We thus conclude that the Act entitles Reynolds to receive interest on her back pay award under the Rehabilitation Act.

### B.

In holding as we do, we break ranks with the other circuits that have decided this issue. *See Baynes v. AT & T Technologies, Inc.,* 976 F.2d 1370 (11th Cir.1992); *Gersman v. Group Health Ass'n, Inc.,* 975 F.2d 886 (D.C.Cir.1992); *Johnson v. Uncle Ben's, Inc.,* 965 F.2d 1363 (5th Cir.1992); *Mozee v. American Commercial Marine Serv. Co.,* 963 F.2d 929 (7th Cir.), *cert. denied* — U.S. ——, 113 S.Ct. 207, 121 L.Ed.2d 148 (1992); *Fray v. Omaha World Herald Co.,* 960 F.2d 1370 (8th Cir.1992); *Vogel v. City of Cincinnati,* 959 F.2d 594 (6th Cir.), *cert. denied* — U.S. ——, 113 S.Ct. 86, 121 L.Ed.2d 49 (1992). We do so in the conviction that the plain language of the Act compels our result. We part with those decisions because they either rely on an administrative agency interpretation or the legislative history of the Act when they should not look beyond the plain text, or because they ignore or misconstrue that dispositive statutory language.

In *Vogel v. City of Cincinnati,* 959 F.2d 594 (6th Cir.1992), the Sixth Circuit ignored sections 402(b) and 109(c) in finding the Act prospective. The court grounded its decision in administrative deference to the Equal Employment Opportunity Commis-

sion's policy statement supporting the Act's prospective application.[5] *Id.* at 598. Because we conclude that the plain language of the Act when read in conjunction with basic principles of statutory construction requires us to find that the Act applies retroactively, we need not heed the Equal Employment Opportunity Commission's contrary conclusion. *See Immigration and Naturalization Service v. Cardozo–Fonseca,* 480 U.S. 421, 445–48, 107 S.Ct. 1207, 1220–22, 94 L.Ed.2d 434 (1987) (explaining that when the judiciary employs traditional tools of statutory construction to find clear congressional intent, deference to a contrary administrative finding is inappropriate).

The Eighth Circuit, in *Fray v. Omaha World Herald Co.,* 960 F.2d 1370, 1377, 1378 (8th Cir.1992), relied on legislative history that it termed "highly probative" and "dispositive" to its alternative holdings under *Bowen* and *Bradley.* When, as here, the text of the statute reveals its plain meaning as to retroactivity, we need not be concerned with legislative history. *See Kaiser,* 494 U.S. at 835, 110 S.Ct. at 1575. Although eight members of the Court have recently reaffirmed the propriety of using legislative history as an aid in discerning legislative intent, *see Wisconsin Public Intervenor v. Mortier,* — U.S. ——, —— n. 4, 111 S.Ct. 2476, 2485 n. 4, 115 L.Ed.2d 532 (1991), we need not do so "[w]hen the words of a statute are unambiguous," *Connecticut Nat'l Bank v. Germain,* — U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). We therefore discuss the legislative history only to accentuate our reasons for not joining the other circuits that have considered the retroactivity of the Civil Rights Act of 1991.

104 L.Ed.2d 268 (1989) (plaintiff denied partnership in 1983); *EEOC v. Arabian American Oil Co.,* — U.S. ——, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) (plaintiff dismissed in 1974); *Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) (consent decree entered in 1981, suit filed in 1982); *Lorance v. AT & T Technologies,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989) (seniority system adopted in 1979, plaintiff laid off in 1982); *West Virginia Univ. Hosps. v. Casey,* — U.S. ——, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991) (disputed practice

occurred in January 1986); *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) (Title VII complaints filed in 1976 and 1977).

5. The *Vogel* court ignored *EEOC v. Arabian American Oil Co.,* — U.S. ——, ——, 111 S.Ct. 1227, 1235, 113 L.Ed.2d 274 (1991), in which the Supreme Court held that EEOC interpretations of Title VII are not entitled to the same deference as are other agency's interpretations of the statutes they are charged with administering.

*Fray* found that the legislative history revealed Congress' intent to apply the Act only prospectively: the President vetoed the proposed Civil Rights Act of 1990, in part because it contained an explicit retroactivity provision. *Fray*, 960 F.2d at 1377, 1378. *See* 136 Cong.Rec. S16,419 (daily ed. Oct. 22, 1990) (President's Message to the Senate Returning Without Approval the Civil Rights Act of 1990). Thus, *Fray* reasoned, because the text of the 1991 Act omitted that provision, Congress must have intended that the 1991 Act apply only prospectively. *Fray*, 960 F.2d at 1377, 1378.

We reject this contention, as did the Seventh Circuit in *Mozee v. American Commercial Marine Serv. Co.*, 963 F.2d 929, 933 (7th Cir.1992). Although Congress did not adopt the proposed 1990 Act, it also refused to adopt the Bush Administration's proposed bill which, in contrast, contained explicitly prospective language.[6]

As all courts of appeals have found, the remainder of the legislative history is equally ambiguous. The statements and interpretive memoranda of different members of the House and Senate conflict on

the issue of retroactivity.[7] Even the bill's principal sponsors, Senators Danforth and Kennedy, disagreed as to whether the Act should apply to pending cases. *See* 137 Cong.Rec. S15,483 (daily ed. Oct. 30, 1991) (statement of Sen. Danforth, stating that the Act applies prospectively); 137 Cong. Rec. S15,485 (daily ed. Oct. 30, 1991) (statement of Sen. Kennedy, stating that the Act applies to pending cases). Senator Danforth, however, ultimately conceded that the legislative history was confusing and noted that "a court would be well advised to take with a large grain of salt floor debate and statements placed into the Congressional Record which purport to create an interpretation for the legislation that is before us." 137 Cong.Rec. S15,325 (daily ed. Oct. 29, 1991) (statement of Sen. Danforth).[8]

In light of the unambiguous text of the Act, we heed Senator Danforth's warning. *Cf.* Stephen Breyer, *On the Uses of Legislative History in Interpreting Statutes*, 65 S.Cal.L.Rev. 845, 861–62 (1992) (where the legislative history of a statute is so confusing and contradictory that it is of no use in ascertaining Congress's intent, we should not attempt to use it as a guide.)

---

6. Section 14 of the Bush proposal stated: "This Act and the amendments made by this Act shall take effect upon enactment. The amendments made by this Act shall not apply to any claim arising before the effective date of this Act." H.R. 1375, 102nd Cong., 1st Sess. (1991).

7. The legislative history regarding the application of the Act to pending cases is rather unusual. No committee or conference reports accompanied the passage of the Act; instead, various members of Congress submitted interpretive memoranda, all of which conflict with one another on the critical question of whether the Act applies to pending cases. *See* 137 Cong.Rec. S15,472–78 (daily ed. Oct. 30, 1991) (Section-by-Section Analysis of Sen. Dole); 137 Cong.Rec. S15,483–85 (daily ed. Oct. 30, 1991) (Interpretive Memorandum of Sen. Danforth); 137 Cong.Rec. S15,485–86 (daily ed. Oct. 30, 1991) (Statement of Sen. Kennedy); 137 Cong.Rec. S15,952–53 (daily ed. Nov. 5, 1991) (Sen. Dole's legislative history on technical amendments); 137 Cong. Rec. S15,963–64 (daily ed. Nov. 5, 1991) (Sen. Kennedy's analysis of technical amendments); 137 Cong.Rec. H9,542–49 (daily ed. Nov. 7, 1991) (Interpretive Memorandum of Rep. Hyde); 137 Cong.Rec. H9,526–32 (daily ed. Nov. 7, 1991) (Section-by-Section Analysis of Rep. Edwards).

There is no explicit reference to section 114(2) in the legislative history.

8. We give little credence to President Bush's statement accompanying his signing of the bill. In this statement, he expressed his agreement with Senator Dole's interpretive memorandum, which stated that the Act would not apply to cases arising before its effective date. *See* Statement of President George Bush Upon Signing S. 1745, Nov. 21, 1991, *reprinted in* 1992 U.S.C.C.A.N. 768, 769.

It is not the President's place to write federal statutes. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) ("It is, emphatically, the province and duty of the judicial department, to say what the law is."); *see also Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587, 72 S.Ct. 863, 867, 96 L.Ed. 1153 (1952) ("In the framework of our Constitution, the President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker. The Constitution limits his functions in the lawmaking process to the recommending of laws he thinks wise and the vetoing of laws he thinks bad."). *See Stender*, 780 F.Supp. at 1305 n. 8.

478

The Seventh Circuit, in *Mozee v. American Commercial Marine Serv. Co.*, 963 F.2d 929 (7th Cir.1992), the Fifth Circuit, in *Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363 (5th Cir.1992), and the D.C. Circuit, in *Gersman v. Group Health Ass'n, Inc.*, 975 F.2d 886 (D.C.Cir.1992), all noted the potential relevance of sections 402(b) and 109(c), but did not find those sections dispositive. None of those cases construed sections 402(b) and 109(c) in light of the qualifying clause of section 402(a).

Moreover, those cases dismissed the importance of sections 402(b) and 109(c) by engaging in unwarranted speculation about Congress' possible motivation in enacting those provisions. *See Mozee*, 963 F.2d at 933; *Johnson*, 965 F.2d at 1373; *Gersman*, 975 F.2d at 890. In finding sections 402(b) and 109(c) unilluminating, those circuits surmised that the explicitly prospective provisions might be redundant assurances that those provisions would not be applied retroactively even if the Act as a whole were found to be retroactive. Thus, those sections could be construed as evidencing no congressional intent concerning the retroactivity of the Act in general. "[G]iven the convoluted legislative history of this Act and the war of interests firing at each other across the floor of both legislative houses, one might view these two subsections not as redundancies, but rather as insurance policies." *Gersman*, 975 F.2d at 890.

We disagree. The language of the Act leaves no room for speculation about the motives of certain members of Congress in voting in favor of sections 402(b) and 109(c). If the statutory language of those sections read: "Notwithstanding any judicial construction concerning the retroactivity of this Act in general, this section shall not apply with respect to conduct occurring before the date of enactment of this Act," we would have an entirely different case. But sections 402(b) and 109(c) as actually enacted simply do not read like insurance clauses.

In all probability, some members of Congress believed that sections 402(b) and 109(c), as written, would be construed by the judiciary as insurance clauses, and voted in favor of those clauses accordingly. Other members of Congress probably believed that the language of those sections would compel the judiciary to find that the Act in general applied retroactively, and voted accordingly. We find those individual members' beliefs unimportant, given the clear text of the Act.

In this case, regardless of what individual legislators said on the floor or in their interpretive memoranda, it is what Congress said in the statute that matters. Whatever their individual disagreement over the desirability of applying the Act to pending cases, the legislators as a body enacted a statute that, consistent with established principles of statutory construction, can only be read one way. Supreme Court and Ninth Circuit precedent require that we give effect to Congress' intent as expressed in the plain language of the statute by applying the Act to the case before us. We conclude that Reynolds is entitled to pre- and postjudgment interest under the provisions of the Act.

CONCLUSION

We hold that Reynolds is entitled to pre- and postjudgment interest under the Civil Rights Act of 1991. The district court's judgment awarding interest is AFFIRMED.