Marcelle **COHEN**

v.

**GEORGIA–PACIFIC CORPORATION.**

**Civ. No. 92–310–SD.**

United States District Court,
D. New Hampshire.

April 21, 1993.

Louis B. Birenbaum, Malden, MA, David Scott Phillips, Manchester, NH, for plaintiff.

Lawrence C. Winger, Portland, ME, Katherine M. Hanna, Concord, NH, for defendant.

## *ORDER*

DEVINE, Senior Judge.

In this action plaintiff Marcelle Cohen seeks redress of the alleged deprivation of her rights to equal employment opportunity as an employee of defendant Georgia–Pacific Corporation under 42 U.S.C. §§ 1981a and 2000e–2, and New Hampshire law. The

court has jurisdiction (1) of plaintiff's federal law claims under 42 U.S.C. § 2000e–5(f)(3) and 28 U.S.C. §§ 1331, 1337(a) and 1343(a)(4); and (2) of plaintiff's state-law claims under 28 U.S.C. § 1367(a). Plaintiff seeks a jury trial on all issues.

Presently before the court is defendant's motion to dismiss Count IV,[1] filed on October 30, 1992, pursuant to Rule 12(b)(6), Fed. R.Civ.P.

### 1. Background

Georgia–Pacific hired plaintiff in June 1987, allegedly in the position of Inside Sales Representative in defendant's Manchester, New Hampshire, sales office. Complaint at ¶ 11. Ms. Cohen alleges she accepted said employment in reliance upon Georgia–Pacific's representation "that, upon performing well as an Inside Sales Representative, she would be promoted to the more lucrative and advanced position of Outside Sales Representative." *Id.* at 12.

Ms. Cohen alleges that during her employment with Georgia–Pacific "[s]he received salary increases, favorable performance evaluations and favorable comments from superiors," and "attained the honor of 1988 Salesperson of the Year" in Georgia–Pacific's Manchester office. *Id.* at ¶ 13. Ms. Cohen alleges that she "was qualified to perform the function of Outside Sales Representative," *id.*, and that during her employment with Georgia–Pacific she "requested of her superiors, including her immediate supervisor, Joseph Caruso, that she be promoted to Outside Sales Representative," *id.* at ¶ 15. Plaintiff further alleges that during said employment, "similarly situated male Inside Sales Representatives possessing less sales experience" were promoted to the position of Outside Sales Representative. *Id.* at ¶ 14. Georgia–Pacific never promoted Ms. Cohen to the position of Outside Sales Representative.

In the course of her employment with Georgia–Pacific, Ms. Cohen was allegedly subjected to the following:

> ■ pictures of bikini-clad women on office walls; [2] regular recitation of sexually explicit jokes; [3] regular use of profane, lewd and sexually offensive language in office conversations; [4] notification of a male employee by Mr. Caruso that the male employee probably could stay overnight with Ms. Cohen if he needed a place to stay; and [5] unwelcome advances by Mr. Caruso and another manager requesting that Ms. Cohen meet them for alcoholic drinks and when she refused, requesting that they come to her apartment, which she also refused.

*Id.* at ¶ 17.

On or about February 11, 1991, Georgia–Pacific discharged Ms. Cohen. Said discharge was allegedly carried out by Joseph Caruso "without warning or notice purportedly on the grounds that her position was being eliminated." *Id.* at ¶ 18. Ms. Cohen alleges that the reason given "was not the real reason for her discharge, but only a pretext." *Id.* at ¶ 21. Ms. Cohen alleges that at the time of her discharge "similarly situated but less qualified and less senior male Inside Sales Representatives were not discharged," *id.* at ¶ 19, and that she "was not afforded the opportunity to transfer to another Georgia–Pacific office as were at least two other similarly situated male employees on prior occasions," *id.* at ¶ 20. Plaintiff alleges that Georgia–Pacific discharged her "because of her gender." *Id.* at ¶ 21.

In Count IV of her complaint, plaintiff seeks relief under section 102 of the Civil Rights Act of 1991, P.L. 102–166, 105 Stat. 1071 (Nov. 21, 1991) (codified at 42 U.S.C. § 1981a) ("1991 Act"), which provides, *inter alia,* for compensatory damages and punitive damages in employment discrimination cases and for the right to a jury trial if the plaintiff

---

1. Plaintiff identifies the claims presented in Count IV with the heading, "CIVIL RIGHTS ACT OF 1991—42 U.S.C. SECTION 1981a", Complaint at 7, and alleges that defendant "engaged in ... intentional discriminatory practices" against plaintiff, "with malice or with reckless indifference to her rights protected by Title VII of the Civil Rights Act of 1964 [Pub.L. No. 88–352, 78 Stat. 241 (1964) ("1964 Act") ]."

Title VII of the 1964 Act is codified at 42 U.S.C. § 2000e, *et seq.* Section 1981a contains amendments to section 2000e. *See infra* note 2.

seeks either compensatory or punitive damages.[2] The essence of defendant's 12(b)(6) motion is that Count IV fails to state a claim upon which relief can be granted because the 1991 Act does not apply to conduct occurring prior to its effective date of November 21, 1991.[3] Defendant's Memorandum In Support Of Motion To Dismiss ("Defendant's Memo") at 1–3.

### 2. Discussion

Defendant urges the court to find that the 1991 Act does not apply retroactively "to matters that arose before the effective date of the Act," Defendant's Memo at 2, because "the great weight of authority is against such retroactive application," *id.* at 2–3 (citing *Baynes v. AT & T Technologies, Inc.*, 976 F.2d 1370 (11th Cir.1992);[4] *Gersman v. Group Health Ass'n, Inc.*, 975 F.2d 886 (D.C.Cir.1992); *Holt v. Michigan Dept. of Corrections*, 974 F.2d 771 (6th Cir.1992) (citing *Vogel v. City of Cincinnati*, 959 F.2d 594 (6th Cir.1992));[5] *Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363 (5th Cir.1992);[6] *Mozee v. American Commercial Marine Service Co.*, 963 F.2d 929 (7th Cir.1992);[7] *Fray v. Omaha World Herald Co.*, 960 F.2d 1370 (8th Cir.1992);[8] EEOC Notice No. 915.002 (Dec. 27, 1991) (finding that the damages provisions of the 1991 Act do not apply retroactively to conduct occurring prior to the effective date of the 1991 Act);[9] *but see Davis v. City and County of San Francisco*, 976 F.2d 1536 (9th Cir.1992) (holding "that Congress intended the courts to apply the Civil Rights

---

**2.** Section 102 amended 42 U.S.C. § 1981 by adding § 1981a, which provides in part:

> **§ 1981a  Damages in cases of intentional discrimination in employment**
> **(a) Right of recovery**
> **(1) Civil rights**
> In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C. 2000e–2 or 2000e–3), and provided that the complaining party cannot recover under section 1977 of the Revised Statutes (42 U.S.C.1981), the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.
> ....
> **(b) Compensatory and punitive damages**
> **(1) Determination of punitive damages**
> A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.
> ....
> **(c) Jury trial**
> If a complaining party seeks compensatory or punitive damages under this section—
> (1) any party may demand a trial by jury
> ....

**3.** Section 402(a) of the 1991 Act provides: "Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." The 1991 Act was en-acted on November 21, 1991, and contains no provisions designating an effective date other than the date of enactment. *See* 1991 Act; *see also* 1991 Act, § 110(b) (§ 110(b), the only other section referring to the effective date of the Act, provides that "the amendment made by [section 110] shall take effect on the date of the enactment of this act").

**4.** *Accord Curtis v. Metro Ambulance Service, Inc.*, 982 F.2d 472 (11th Cir.1993).

**5.** *Accord Harvis v. Roadway Express, Inc.*, 973 F.2d 490 (6th Cir.1992), *petition for cert. granted in part, Landgraf v. USI Film Prod.*, —— U.S. ——, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993).

**6.** *Accord Landgraf v. USI Film Products*, 968 F.2d 427 (5th Cir.1992), *petition for cert. granted in part, Landgraf v. USI Film Prod., supra*, —— U.S. ——, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993).

**7.** *Accord Banas v. American Airlines*, 969 F.2d 477 (7th Cir.1992); *Luddington v. Indiana Bell Tel. Co.*, 966 F.2d 225 (7th Cir.1992).

**8.** *Accord Huey v. Sullivan*, 971 F.2d 1362 (8th Cir.1992).

**9.** " 'The traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress.' " *Dole v. Steelworkers*, 494 U.S. 26, 43, 110 S.Ct. 929, 938, 108 L.Ed.2d 23 (1990) (quoting *Board of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 368, 106 S.Ct. 681, 686, 88 L.Ed.2d 691 (1986)). Accordingly, because the court is able to discern the clear intent of Congress as to the issue of retroactivity based on the language of the 1991 Act, as discussed *infra*, the court does not consider the construction of the Act set forth by the EEOC.

Act of 1991 to cases pending at the time of its enactment and to pre-Act conduct still open to challenge after that time"),[10] *reh'g denied, vacated in part, remanded,* 984 F.2d 345 (9th Cir.1993) (portion of opinion dealing with issue of retroactivity of 1991 Act vacated as moot due to settlement of claims for expert witness fees)). *Accord Butts v. City of New York Dept. of Housing Preservation & Dev.,* 990 F.2d 1397 (2d Cir.1993) (holding that "the § 1981 amendments [contained in § 101] of the Civil Rights Act of 1991 do not apply retroactively").

### a. A Survey of the Circuits

The First Circuit has not addressed this issue. *Compare, e.g., Bonilla v. Liquilux Gas Corp.,* 812 F.Supp. 286 (D.P.R.1993) (holding that the damages and jury trial provisions of the 1991 Act apply to conduct occurring prior to the date of enactment) (citing, inter alia, *Aledo–Garcia v. Puerto Rico Nat'l Guard Fund, Inc.,* 887 F.2d 354, 355 (1st Cir.1989)), *with Letourneau v. Casa Mia, Inc.,* 804 F.Supp. 389 (D.Me.1992) (noting that "the First Circuit precedents provide no guidance" and holding that the damages provisions of the 1991 Act do not apply to conduct occurring prior to the date of enactment).

The favored approach among those circuits which have held that the 1991 Act does not apply retroactively has been to find (1) that the statutory language and legislative history are inconclusive as to the issue of retroactivity; and (2) that the presumption against

retroactivity contained in *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988),[11] must therefore be applied. *See Butts v. City of New York Dept. of Housing Preservation & Dev.,* supra, 990 F.2d at 1404–1410; *Gersman v. Group Health Ass'n, Inc.,* supra, 975 F.2d at 888–900; *Johnson v. Uncle Ben's, Inc.,* supra, 965 F.2d at 1372–74; *Mozee v. American Commercial Marine Serv. Co.,* supra, 963 F.2d at 932–40; *Vogel v. City of Cincinnati,* supra, 959 F.2d at 597–98. An alternative approach among such courts has been to find (1) that the statutory language and legislative history are inconclusive as to the issue of retroactivity; and (2) that the choice between the *Georgetown* and *Bradley* principles is unnecessary because the application of each leads to the same determination; i.e., that the relevant provisions of the 1991 Act do not apply to conduct occurring prior to the effective date of the Act. *See Baynes v. AT & T Technologies, Inc.,* supra, 976 F.2d at 1372–73; *Landgraf v. USI Film Products,* supra, 968 F.2d at 432–33 (citing the reasoning in *Johnson v. Uncle Ben's Inc.,* supra, as the basis for its conclusion "that there is no clear congressional intent on the general issue of the [1991] Act's application to pending cases"). The least-favored approach has been to find (1) that the statutory language of the 1991 Act is inconclusive as to the issue of retroactivity and (2) that under either *Georgetown* or *Bradley* the Act does not apply retroactively because its legislative history clearly indicates that Congress did not

---

**10.** *Accord Estate of Reynolds v. Martin,* 985 F.2d 470 (9th Cir.1993) ("We give proper effect to the language of the 1991 Act by applying it to cases pending at the time of its enactment.").

**11.** In *Georgetown Univ. Hosp.,* the Supreme Court held that "a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms," *id.,* 488 U.S. at 208, 109 S.Ct. at 471, based on the "principle" that "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.*

Previously, in *Bradley v. Richmond School Bd.,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476

(1974), the Court had "anchor[ed] [its] holding" that a provision concerning the award of attorney's fees in school desegregation cases was applicable to attorney's services rendered prior to the date of enactment "on the principle that a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.,* 416 U.S. at 711, 94 S.Ct. at 2016 (construing § 708 of the Education Amendments of 1972, Pub.L. No. 92–318, 86 Stat. 235, 369); *see generally id.* at 710–24, 94 S.Ct. at 2015–22.

In *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), the Court recognized the "apparent tension" between these two principles, yet declined to "reconcile the two lines of precedent represented by *Bradley, supra,* and *Georgetown, supra." Id.* at 837, 110 S.Ct. at 1577.

intend such application. *See Fray v. Omaha World Herald Co., supra,* 960 F.2d at 1373–78.[12] Based on its determination that the statutory language of the 1991 Act does indeed provide conclusive evidence of Congress's intent regarding the issue of retroactivity, *Estate of Reynolds v. Martin, supra* note 10, 985 F.2d at 473–74, this court finds each of these approaches to be in error.

### b. Interpreting the Statute

"The starting point for interpretation of a statute 'is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'" *Kaiser Aluminum & Chem. Corp. v. Bonjorno, supra,* 494 U.S. at 835, 110 S.Ct. at 1575.

Section 109(c) of the 1991 Act limits the application of section 109 [13] with the following plain and precise language: *"The amendments made by this section shall not apply with respect to conduct occurring before the date of the enactment of this Act."* [14] 1991 Act, § 109(c), 105 Stat. at 1078 (emphasis added). Section 402(b) contains an equally plain and precise limitation on the application

of the 1991 Act: "Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983." [15] 1991 Act, § 402(b), 105 Stat. at 1099. Sections 109(c) and 402(b) are the only provisions of the 1991 Act which express the clear intention of Congress on the issue of the Act's applicability to conduct occurring before the date of enactment. *See* 1991 Act. Said Act contains no language indicating that any other provision is not applicable to preenactment conduct. *See id.*

'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' *Russello v. United States,* [464 U.S. 16, 12, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1993)] (quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (CA5 1972)).

*I.N.S. v. Cardoza–Fonseca,* 480 U.S. 421, 432, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987);

**12.** In this regard, the *Fray* court stated:

> Here, [President Bush] vetoed a bill containing an explicit retroactivity provision. That veto could not be overridden and a compromise bill omitting those provisions was then enacted. Whatever ambiguities may be found elsewhere in the Act and its legislative history, we think this history is dispositive, even under *Bradley.* When a bill mandating retroactivity fails to pass, and a law omitting that mandate is then enacted, the legislative intent was surely that the new law be prospective only; any other conclusion simply ignores the realities of the legislative process. *See* Norman J. Singer, 2A Sutherland Statutory Construction § 48.04 (5th ed. 1992).

*Fray, supra,* 960 F.2d at 1378.

The foregoing conclusion assumes (1) that President Bush correctly and definitively interpreted the 1991 Act as having prospective application only and (2) that such interpretation controlled his decision to sign the Act into law. Without delving into the President's motives for signing the 1991 Act, the court finds said conclusion to be in error because it overstates the role of the President in the lawmaking process. *See Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 587, 72 S.Ct. 863, 867, 96 L.Ed. 1153 (1952) ("In the framework of our Constitution, the President's power to see that the laws are faithfully executed refutes the idea that he is to be a

lawmaker. The Constitution limits his functions in the lawmaking process to the recommending of laws he thinks wise and the vetoing of laws the thinks bad."); *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) ("It is, emphatically, the province and duty of the judicial department, to say what the law is."); *see also Estate of Reynolds, supra,* 985 F.2d at 477 n. 8 ("It is not the President's place to write federal statutes") (citing and quoting *Marbury v. Madison, supra; Youngstown Sheet & Tube, supra* ).

**13.** Section 109 contains amendments to the 1964 Act and the Americans with Disabilities Act of 1990, Pub.L. No. 101–336, 104 Stat. 327 (1990) (codified at 42 U.S.C. § 12101, *et seq.*), which broaden the coverage of certain provisions of these Acts to include the protection of United States citizens employed in foreign countries by American employers. 1991 Act, §§ 109(a) and (b), 105 Stat. at 1077.

**14.** The court notes that the 1991 Act's effective date and its date of enactment are identical. *See supra* note 3.

**15.** This provision renders the 1991 Act inapplicable to pending litigation involving the parties in *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). *See, e.g., Johnson, supra,* 965 F.2d at 1372 n. 4.

*Allende v. Shultz*, 845 F.2d 1111, 1117 (1st Cir.1988). Accordingly, the court presumes that the limitations on the 1991 Act's applicability to pre-enactment conduct contained in sections 109(c) and 402(b) reflect the intent of a majority of each house of Congress that the remaining provisions of the Act be applied to preenactment conduct. *See Estate of Reynolds, supra,* 985 F.2d at 473–74.[16] This presumption is reinforced by the " 'elementary canon of construction that a statute should be interpreted so as not to render one part inoperative,' " *South Carolina v. Catawba Indian Tribe, Inc.,* 476 U.S. 498, 510 n. 22, 106 S.Ct. 2039, 2046 n. 22, 90 L.Ed.2d 490 (1986) (quoting *Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979)),[17] since sections 109(c) and 402(b) would serve no purpose if the entire 1991 Act were to be construed as having prospective application only. *Estate of Reynolds, supra,* 985 F.2d at 473–74.

### c. A Misplaced Reliance on an Inconclusive Legislative History

Not surprisingly, a clear majority of those circuits holding that the 1991 Act does not apply retroactively disagree with the proposition that the language of sections 109(c) and 402(b) is determinative.[18] *See Butts, supra,* 990 F.2d at 1408; *Gersman, supra,* 975 F.2d at 890; *Harvis, supra,* 973 F.2d at 496; *Johnson, supra,* 965 F.2d at 1372–73; *Mozee, supra,* 963 F.2d at 932–33; *Fray, supra,* 960 F.2d at 1377–78. For all but the *Fray* court,[19] this disagreement is rooted in the incongruous finding that although the 1991 Act's legislative history is inconclusive, it conclusively demonstrates that sections 109(c) and 402(b) do not indicate that Congress intended the Act to have retroactive application. *See Butts, supra* at 1407 (terming §§ 109(c) and 402(b) " 'insurance policies' against the possibility that a court would deem the entire [1991] Act to apply retroactively" (quoting *Gersman, supra* at 890, and citing *Johnson, supra,* 965 F.2d at 1372–73, and *Mozee, supra,* 963 F.2d at 933)); *Gersman, supra,* at 890 ("given the convoluted legislative history of [the 1991 Act] and the war of interests firing at each other across the floor of both legislative houses, one might view [§§ 109(c) and 402(b) ] not as redundan-

---

**16.** The court respectfully declines to adopt the Ninth Circuit's view that section 402(a) indicates that Congress intended the 1991 Act to have retroactive application as stated in *Estate of Reynolds, supra,* at 472–73.

**17.** *Accord Mackey v. Lanier Collection Agency & Serv.,* 486 U.S. 825, 837, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836 (1988) ("As our cases have noted in the past, we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." (citing *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 142, 105 S.Ct. 3085, 3090, 87 L.Ed.2d 96 (1985); *FEC v. National Conservative Political Action Comm.,* 470 U.S. 480, 486, 105 S.Ct. 1459, 1463, 84 L.Ed.2d 455 (1985); *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 197, 105 S.Ct. 658, 663, 83 L.Ed.2d 582 (1985); *United States v. Generix Drug Corp.,* 460 U.S. 453, 458–59, 103 S.Ct. 1298, 1301, 75 L.Ed.2d 198 (1983); *Dickerson v. New Banner Institute,* 460 U.S. 103, 118, 103 S.Ct. 986, 994, 74 L.Ed.2d 845 (1983)); *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249–50, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985) (quoting same *Colautti* language 439 U.S. at 392, 99 S.Ct. at 684); *Jarecki v. G.D. Searle & Co.,* 367 U.S. 303, 307–08, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961) (noting that where a "statute admits a reasonable construction which gives effect to all of its provi-

sions," the Court "will not adopt a strained reading which renders one part a mere redundancy"); *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) (" 'The cardinal principal of statutory construction is to save and not to destroy.' It is our duty 'to give effect, if possible, to every clause and word of a statute,' rather than to emasculate an entire section . . . ." (quoting *Labor Board v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 30, 57 S.Ct. 615, 621, 81 L.Ed. 893 (1937)), and *Montclair v. Ramsdell,* 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883)); *Allende v. Shultz, supra,* 845 F.2d at 1118 (referring to " 'the well-settled rule of statutory construction that all parts of a statute, if at all possible, are to be given effect,' " (quoting *Weinberger v. Hynson, Westcott & Dunning,* 412 U.S. 609, 633, 93 S.Ct. 2469, 2485, 37 L.Ed.2d 207 (1973))).

The court notes that section 110(b) of the 1991 Act, discussed at note 3 *supra,* is an example of a provision which might reasonably be considered redundant under the above authority.

**18.** Among the circuits in question, only the Eleventh Circuit has yet to express its view toward this proposition. *See Baynes, supra; Curtis, supra.*

**19.** The *Fray* court's interpretation of sections 109(c) and 402(b) is discussed *infra.*

cies, but rather as insurance policies"); *Harvis, supra,* 973 F.2d at 496 (" 'when a congressional majority could be marshalled, retroactivity opponents 'hedged their bets' by expressly making specific provisions, such as § 109, prospective only' " (quoting *Fray, supra,* 960 F.2d at 1377)); *Johnson, supra,* at 1373 ("Congress may have wanted to ensure that certain retroactive applications of the statute were barred without intending to reach any general conclusion about the statute's general retroactive application"); *Mozee, supra,* 963 F.2d at 933 ("Section 402(b) is nothing more than a clear assurance that courts would not apply the 1991 Act to the *Wards Cove* litigation regardless of how the courts might eventually construe the 1991 Act's applicability to pending cases. . . . [The language of § 109(c) ] can be interpreted as an extra assurance that this Section's provisions will only apply to the post-enactment conduct regardless of how the court eventually applies the Act's other provisions"). The *Fray* court's disagreement with this proposition is based on its findings that (1) the significance of section 402(b) is negated by "the conflicting pronouncements as to the presumption of retroactivity" made during congressional debate over the amendment that became section 402(b) and the statements of "numerous Senators" to the effect that "their vote in favor of this amendment did not reflect an intent that the remainder of the [1991] Act apply retroactively," *Fray, supra,* 960 F.2d at 1377 (citing 137 Cong.Rec. S15,963–67 (daily ed. Nov. 5, 1991)); and (2) "There seems to have been no floor debate whatsoever on § 109(c), so it provides no basis for inferring a general intent as to retroactivity." *Id.,* 960 F.2d at 1377.[20]

The legislative history of the 1991 Act does not include any statement agreed upon by a majority of each house of Congress as to whether or not the Act should be given retroactive application by the courts. *See* U.S.C.C.A.N., 102d Cong., 1st Sess., Vol. 2, Legislative History at 549–769 (1991) (noting that "No Senate Report was submitted with this legislation" and stating the contents of the 1991 Act's legislative history as House Report (Education and Labor Committee) No. 102–40(I), Apr. 24, 1991; House Report (Judiciary Committee) No. 102–40(II); Cong.Record Vol. 137 (1991); an Interpretive Memorandum (regarding "Wards Cove— Business necessity/cumulation/alternative business practice"); The President's Signing Statement). As a result, the legislative history cited in these cases is limited to the discrete statements and remarks of individual members of Congress purportedly offered to ensure that section 402(b) would preclude retroactive application of the 1991 Act to the *Wards Cove* litigation[21] without implying that the remainder of the Act applies retroactively. *See Butts, supra,* 990 F.2d at 1408 (citing 137 Cong.Rec. S15,469 (daily ed. Oct. 31, 1991) (statement of Sen. Adams); 137 Cong.Rec. S15,478 (daily ed. Oct. 30, 1991) (statement of Sen. Dole); 137 Cong.Rec. H9, 555–56 (daily ed. Nov. 7, 1991) (statement of Del. Faleomavaega); 137 Cong.Rec. S15,493 (daily ed. Oct. 30, 1991) (statement of Sen. Murkowski); 137 Cong.Rec. S15,953 (daily ed. Nov. 5, 1991) (statement of Sen. Dole)); *Gersman, supra,* 975 F.2d at 890 (citing 137 Cong.Rec. S15,953 (daily ed. Nov. 5, 1991) (statement of Sen. Dole); 137 Cong.Rec. S15,483 (daily ed. Oct. 30, 1991) (statement of Sen. Danforth); 137 Cong.Rec. H9,512 (daily ed. Nov. 7, 1991) (statement of Rep. Hyde); 137 Cong.Rec. S15,966 (daily ed. Nov. 5, 1991) (remarks of Sen. Gorton)); *Harvis, supra,* 973 F.2d at 496 (construing the courts in *Vogel* and *Fray* as determining "that the legislative history sheds little light on the matter, as Senators expressed conflicting views, and no legislative committee reports

---

**20.** The court notes that the legislative history of the 1991 Act does not specifically address section 109(c). *See, e.g., Butts, supra,* 990 F.2d at 1407 (noting that § 109(c) "is uninformed by any legislative history").

The *Fray* court's implication that the absence of any legislative history concerning a particular statutory provision negates any inference which might be drawn from the plain and precise language of that provision is erroneous. *See Mansell v. Mansell,* 490 U.S. 581, 592, 109 S.Ct. 2023, 2030, 104 L.Ed.2d 675 (1989) ("the absence of legislative history . . . is immaterial in light of the plain and precise language of [a given] statute; Congress is not required to build a record in the legislative history to defend its policy choices").

**21.** *See supra* note 15 and accompanying text.

exist explaining the bill"); *Johnson, supra,* 965 F.2d at 1373 (referring to speeches and remarks by members of Congress cited in *Fray, supra,* 960 F.2d at 1376; *Mozee, supra,* 963 F.2d at 934; and *Vogel, supra,* 959 F.2d at 598); *Mozee, supra,* 963 F.2d at 933 n. 2 (citing Cong.Rec. S15,478 (daily ed. Oct. 30, 1991) (statement of Sen. Dole)). Senator Danforth, a principal cosponsor of S. 1745, the Senate bill which became the 1991 Act, best expressed the utility of this form of legislative history:

> It is very common for Members of the Senate to try to affect the way in which a court will interpret a statute by putting things into the Congressional Record. Sometimes statements are made on the floor of the Senate. . . .
>
> Another way to do it is to put interpretive memoranda in the Congressional Record. These memoranda typically are not read on the floor of the Senate. They are just stuck into the Record. . . .
>
> Last Friday, Senator Kennedy made a speech on the floor of the Senate. He stated his views of what the bill does. Senator Hatch has just made a very extensive speech on the floor. He stated his views of what the bill does.
>
> My guess, Mr. President, is that if Senator Kennedy would give us his analysis of Senator Hatch['s] position, he would disagree with it. If Senator Hatch would give us his analysis of Senator Kennedy's position, Senator Hatch would disagree with Senator Kennedy. I might disagree with both of them. I anticipate that I am going to have an interpretive memorandum which will be put into the Record signed by the other original six Republican cosponsors for the legislation. That will be our interpretation of various provisions, but it may not be the interpretation of Senator Hatch or Senator Kennedy or anybody else. . . .
>
> . . . [W]hatever is said on the floor of the Senate about a bill is the view of a Senator who is saying it. . . . *[A] court would be well advised to take with a large grain of salt floor debate and statements placed into the Congressional Record which pur-*

*port to create an interpretation for the legislation that is before us.*

137 Cong.Rec. S15,325 (daily ed. Oct. 29, 1991) (statement of Sen. Danforth) (LEXIS, Genfed library, 102nd file) (emphasis added).

In light of the above, and bearing in mind that a court need only consider a statute's legislative history to the extent that " 'aid can be derived' " therefrom, *see Wisconsin Public Intervenor v. Mortier,* —— U.S. ——, —— n. 4, 111 S.Ct. 2476, 2485 n. 4, 115. L.Ed.2d 532 (1991) (quoting *Fisher v. Blight,* 6 U.S. (2 Cranch) 358, 386, 2 L.Ed. 304 (1805)), the court remains bound by the "one, cardinal canon [of construction] . . . that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain,* —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992); *see also Kaiser Aluminum & Chem. Corp. v. Bonjorno, supra,* 494 U.S. at 835, 110 S.Ct. at 1575 (quoted *supra* at page ——). Therefore, this court's presumption that sections 109(c) and 402(b) demonstrate Congress's clear intention that the remaining provisions of the 1991 Act should have retroactive application is not rebutted by the weight of the evidence contained in the Act's legislative history. Further, this court finds nothing in the language of section 102 to rebut said presumption as it applies to section 102. *See* 1991 Act, § 102, quoted *supra* at note 2. Accordingly, the court finds that section 102 of the 1991 Act applies to conduct occurring prior to the Act's effective date of November 21, 1991, and defendant's motion to dismiss must be denied.

### 3. Conclusion

For the reasons stated herein, defendant's motion to dismiss pursuant to Rule 12(b)(6) is denied.

SO ORDERED.