Connie J. KENT, Plaintiff,

v.

Dan HOWARD, Acting Secretary of the Navy, James Holbrook, an individual, Ed Segismar, an individual, and Tom Humphrey, an individual, Defendants.

Civ. No. 92–280–R(M).

United States District Court, S.D. California.

Aug. 24, 1992.

330

Paula Rotenberg, Carrie Gleeson, Mulvaney, Kahan & Barry, San Diego, Cal., for plaintiff.

Lloyd Edward Tooks, San Diego, Cal., Sarah Wilson, Dept. of Justice, Washington, D.C., for defendants.

RHOADES, District Judge.

*Background*

The plaintiff is a former facilities clerk at the Naval Air Station Miramar Navy Exchange in San Diego. She has filed a complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16 (1988) alleging harassment and discrimination. Defendants include the Secretary of the Navy, and three civilian employees. Two motions to dismiss are before the court; the first brought by the individual defendants, and the second brought by the U.S. government on behalf of the Secretary of the Navy.

*Motion to dismiss of defendants Holbrook, Segismar & Humphrey*

The individual named defendants challenge the complaint on two grounds: they claim first that Title VII is the exclusive remedy for the plaintiff, preempting her state law tort claims. Second, they urge that the Ninth Circuit position regarding a parallel statutory scheme, the Civil Service

Reform Act of 1991, effectively preempts any state law claims against the individual defendants. For the following reasons, both grounds to dismiss fail.

*Title VII claims*

■ In support of the argument that Title VII provides the exclusive remedy for the plaintiff, the individual defendants cite *Brown v. General Services Admin.,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), and *Vinieratos v. U.S. Dept. of Air Force,* 939 F.2d 762 (9th Cir.1991). These cases do not address the plaintiff's contention that since the defendants were acting outside of their authority, the state law tort claims should stand. In *Otto v. Heckler,* 781 F.2d 754 (9th Cir.1986), the court addressed a case involving a federal employee who filed state law tort claims and Title VII claims alleging sexual harassment. The court noted that *Brown,* cited above, established Title VII as the exclusive remedy for discrimination in federal employment, but the court added that torts that are "highly personal violations beyond the meaning of discrimination" are separately actionable. *Otto,* 781 F.2d at 757, citing *Stewart v. Thomas,* 538 F.Supp. 891, 895 (D.D.C.1982). The court found that the plaintiff's supervisor was not immune from tort liability because his actions of following, defaming, and harassing the plaintiff were not activities within the scope of his official duties. The court stated that whether the supervisor acted within the perimeter of his authority required a resolution of fact questions that should not be resolved at the pleading stage. *Id.* at 758. *Otto* stands for the proposition that Title VII does not provide the exclusive remedy where "highly personal violations" have occurred.

In *Arnold v. U.S.,* 816 F.2d 1306 (9th Cir.1987), the plaintiff brought Title VII sex discrimination claims and state tort law claims against her federal employer. In reviewing whether the plaintiff could proceed with her state law claims, the court cited *Otto,* and noted that the supervisor's actions were beyond the scope of his authority. Therefore, he could not claim immunity and the state law claims were prop-

erly brought. The court ultimately dismissed the state law claims because the applicable statute of limitations had run. The court distinguished between the goals of Title VII actions, and the purpose of allowing other remedies:

> Although sexual harassment may be redressed through a claim brought under Title VII [citation omitted], the wrong underlying Arnold's Title VII claim is distinct from that underlying her state-law tort claims. In her state-law claims Arnold seeks to vindicate not her right to be free from discrimination in the workplace, but rather her right to be free from 'bodily or emotional injury caused by another person.' [citing *Otto*]. Indeed, it is precisely because these wrongs are different that Arnold's state-law claims are not precluded by Title VII.

*Id.* at 1312–1313. *Arnold* supports the holding of *Otto* that Title VII remedies can be supplemented by state law causes of action. For these reasons, the defendants' citation to *Vinieratos* is unavailing; *Vinieratos* was decided after *Otto* and *Arnold,* but it fails to cite or distinguish either one, nor does it purport to be a thorough discussion of whether Title VII is the exclusive remedy for a plaintiff such as the one in the present case.

The individual defendants reject this interpretation, arguing first that language of *Otto* requires a different factual predicate to justify alternative means of recovery. The *Otto* court cited such a proposition from its rulings in *White v. General Services Admin.,* 652 F.2d 913 (9th Cir.1981), and *Nolan v. Cleland,* 686 F.2d 806 (9th Cir.1982), but it specifically interposed a new standard two paragraphs after those cited by the defendants: "The better view is that torts which constitute 'highly personal violations beyond the meaning of "discrimination" [are] separately actionable.' [citation omitted] We reaffirm our holdings in *White* and *Nolan* that Title VII does not preclude all other claims for relief...." *Otto,* 781 F.2d at 756–57. The defendants err in arguing that the circumstance of the same *factual* history preclude state law tort recovery; rather, as the *Ar-*

**332**

*nold* opinion makes clear, the plaintiff is free to pursue state law relief where the violation has gone beyond discrimination in the workplace and involved physical or emotional injury that is highly personal.

Defendants cite *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), for the proposition that there is no meaningful distinction between seeking relief for workplace discrimination and seeking relief for the personal injury. In *Chilicky,* the Supreme Court held that where Congress has designed a program with adequate remedial measures for constitutional violations, *Bivens* actions should not be implied.[1] *Chilicky* involved a *Bivens* action brought by Social Security benefit recipients who were wrongfully denied benefits for a period of time. The Court found that the continuing disability review procedures of the Social Security Act provided adequate measures of relief for the appellants. *See also, Kotarski v. Cooper,* 866 F.2d 311 (9th Cir.1989). *Chilicky* is distinguishable from the present case; the defendants have not shown that Title VII provides adequate remedies to compensate the plaintiff for her injuries, and the injuries in *Chilicky,* which were purely monetary, are distinguishable from the injuries in this case, which were physical and emotional damages resulting from the alleged acts of harassment.

The defendants also claim that the plaintiff is incorrect in asserting that Title VII is not the exclusive remedy when the defendants are acting outside of the scope of their duties. They claim that the scope of duties is relevant only to a claim of immunity. As the review of *Otto* and *Arnold* above indicates, the courts review the scope of the alleged wrongdoers' authority as a part of their analysis to determine whether the state law claims can proceed. The court in *Otto* specifically noted that in determining whether the state law claims can proceed, the court must recognize that the exact perimeter of authority is a question of fact that is not ideally determined at the pleading stage. *Accord, Wood v. U.S.,*

956 F.2d 7, 12 (1st Cir.1992) (reh'g pending) ("It would be an unusual job, to say the least, if sexual harassment and assault and battery were included in the scope of Major Owens' job description.... The appropriate forum for determining the truth of Ms. Wood's allegations vis-a-vis Major Owens' denial is the trial on the merits."). The district court in *Wood* analysed the case law and concluded that Title VII did not preclude state law claims when the government agents were acting outside of the scope of their authority. The court agreed with the District Court for the District of Columbia, which concluded that an interpretation that *Brown v. General Services Admin.,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), did not affect the availability of state tort remedies was "supported by the deference Title VII accords state laws barring employment discrimination." *Wood v. U.S.,* 760 F.Supp. 952, 957 (D.Mass.1991), *quoting, Epps v. Ripley,* 30 BNA FEP Cas. 1632, 1982 WL 514 (D.D.C. 1982); *accord, Martin v. Merriday,* 706 F.Supp. 42, 46 (N.D.Ga.1989) ("There is substantial authority allowing a plaintiff to sue both for sexual harassment under Title VII and for tortious conduct under state law.").

A consideration of these cases and the briefs by the parties compels the conclusion that the Ninth Circuit looks to the degree of intrusion; if state law claims are raised in order to vindicate personal injuries that extend beyond discrimination in the workplace, then Title VII does not provide the exclusive remedy. The plaintiff has made a prima facie showing of injuries that extend beyond workplace discrimination, and the individual defendants' motion to dismiss on the ground that Title VII preempts state law claims is denied with prejudice.

*Civil Service Reform Act claims*

The individual defendants also claim that the Civil Service Reform Act of 1991

---

1. In *Bivens v. Six Unknown Named Agents of the Fed. Narcotics Bureau,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Court held that federal officers who acted under color of law were liable for damages caused by their violation of the plaintiff's Fourth Amendment rights.

("CSRA") preempts the plaintiff's tort claims. They rely entirely on *Saul v. U.S.,* 928 F.2d 829 (9th Cir.1991). The CSRA allows federal employees to challenge "prohibited personnel practices" by their supervisors. 5 U.S.C. § 2302 (West 1992). The Act describes "personnel actions" as including an appointment, a promotion, a disciplinary or corrective action, a transfer, a reinstatement, a restoration, a reemployment, a performance evaluation, a decision concerning pay, benefits or awards, or any other significant change in duties or responsibilities that is inconsistent with the employee's salary or grade level. 5 U.S.C. § 2302(a)(2)(A)(i)–(x). The CSRA also prohibits "any employee who has authority to take, direct others to take, recommend, or approve any such personnel action ... with respect to such authority" from discriminating on the basis of race, color, religion, sex, age, or certain other enumerated characteristics. 5 U.S.C. § 2302(b)(1)(A). Thus, sexual harassment may or may not be remediable under the CSRA, depending on whether the harassing conduct is performed by one with authority to take personnel actions, and who is acting "with respect to such authority."

The complaint alleges various forms of sexual harassment, including repeated comments on the plaintiff's unmarried status and lack of a male companion, touching and grabbing the plaintiff's breasts, legs, hips, and buttocks, making obscene gestures with mouth and tongue, attempting to kiss the plaintiff forcibly, following the plaintiff and harassing her as she left work, and describing dimensions of private parts. *See* Complaint filed February 25, 1992, at ¶¶ 13, 15, 18.

In *Saul,* the plaintiff alleged that his supervisors at the Social Security Administration had opened personal mail addressed to him at work, that they had orally defamed him to a congressional aide, and had forbidden him from sitting at his desk before 8:00 a.m. or on weekends in order to prevent the accrual of overtime. The plaintiff alleged tortious infliction of emotional distress, defamation, and invasion of privacy along with other constitutional violations. The court found all the alleged actions of Saul's supervisors to be "corrective actions" related to legitimate personnel goals that triggered the remedial scheme of the CSRA and preempted his state law causes of action.

In the present case, the alleged acts of the individual defendants can in no way be viewed as corrective actions conducted in furtherance of personnel objectives. Nor are the alleged acts ones that could be taken with respect to the defendants' authority to take personnel action. The alleged actions bear no relation to the supervisor/subordinate relationship. In the absence of any link between the alleged harassment and the authority of the defendants to take personnel action pertaining to the plaintiff, her state law causes of action against them are not preempted.

Furthermore, the plaintiff elected to proceed with her claim against the Navy by means of a federal Title VII claim, and against the individual defendants by means of state law claims. She could not, by law, elect to proceed in this manner *and* to seek relief under the CSRA by initiating an investigation by the Office of Special Counsel. *See* Supplemental Declaration of Paula Rotenberg in Opposition to the Individual Defendants' Motion to Dismiss, filed July 22, 1992. It would be patently unfair to force the plaintiff to make an election, and then destroy her elected cause of action through some extension of the foregone remedy. The plaintiff, reasonably interpreting the CSRA to not extend to harassing conduct, chose to pursue her claim under Title VII and state law. The dead hand of preemption cannot reach forth now to deprive her of the opportunity to proceed. Thus, the CSRA does not act to preempt the plaintiff's state law claims.

*Motion to dismiss of defendant Dan Howard, Acting Secretary of the Navy*

The Secretary makes two arguments: first, the Title VII claim should be dismissed because the plaintiff has failed to exhaust administrative remedies in a timely fashion, and second, the plaintiff's demand for a jury trial and compensatory damages should be dismissed because the Civil

Rights Act of 1991, which established those rights, was not intended to apply to conduct preceding enactment. On both grounds, the motion to dismiss is denied.

*Failure to exhaust administrative remedies*

 As the plaintiff describes the process, persons bringing an employment discrimination claim face three different deadlines. The first step involves the filing of an informal charge of discrimination with the Equal Employment Opportunity ("EEO") counselor. This complaint must be filed within 30 days of the occurrence of the conduct complained of. If the complaint is not resolved, the plaintiff must then file a formal complaint with the EEO counselor within 15 days of notification of the right to file a formal complaint. Finally, the plaintiff may file a civil complaint in the appropriate U.S. District Court within 30 days of notification of final agency action. The Ninth Circuit requires greater diligence in obeying the procedural rules and deadlines as a party moves through this system. *Cooper v. Bell,* 628 F.2d 1208 (9th Cir.1980).

The statute provides that the "agency *shall* extend the time limits in this section when the complainant shows that he/she was not notified of the time limits and was not otherwise aware of them...." 29 C.F.R. § 1613.214(a)(4). The complaint in this case states:

> At no point during her employment with NAVY was Plaintiff advised by the NAVY or any NAVY personnel of the administrative procedures required by the Equal Employment Opportunity office of the NAVY. Specifically, Plaintiff was not informed of the thirty day reporting requirement to an EEO officer for incidents of sexual harassment. Plaintiff did not discover the thirty day reporting requirement until she retained an attorney in October of 1991.

Complaint, at ¶ 48. The Ninth Circuit, in *Thornhill v. Marsh,* 866 F.2d 1182, 1184 (9th Cir.1989), noted the mandatory language of 29 C.F.R. § 1613.214(a)(4), and held, "[w]e have recognized that strict compliance with the filing period may be ex-

cused 'if the plaintiff had neither official notice nor actual knowledge of the filing period.'" The court also noted that the fact the plaintiff consulted an attorney may be relevant evidence, but that it is hardly conclusive. *Id.* at 1184–85. The *Thornhill* court noted that whether the plaintiff had notice was a question of fact, and that summary judgment was inappropriate. *Id.* at 1184. Because a fact question is presented, this court is not inclined to dismiss the claim at this stage of the proceedings. Nor has the defendant presented any Ninth Circuit case law requiring the plaintiff to show affirmatively that no notice was given or received.

In this case, the plaintiff has made a showing that she was not informed of the filing requirements; she has satisfied the requirements of the statute and of *Thornhill.* The motion to dismiss for failure to exhaust administrative remedies is denied with prejudice.

*Retroactivity of Civil Rights Act of 1991*

 The Secretary also challenges the plaintiff's request for a jury trial and for compensatory damages. The Civil Rights Act of 1991 was signed into law on November 21, 1991. The Act responded to recent Supreme Court decisions expanding the protection provided to victims of discrimination in relevant civil rights statutes. Civil Rights Act § 3(4). The plaintiff will be entitled to the expanded rights provided by the Act if this court finds that the act applies retroactively to cases pending at the time of its enactment.

Several recent decisions inform my review. Within the last three months, Judge Enright of this district has ruled on this issue, finding that Ninth Circuit precedent requires a finding of retroactivity of the Act. *See* Memorandum Decision and Order in *Jones v. Garrett,* Civil No. 91–0707–E(P) 1992 WL 317558 entered June 12, 1992. Judge Enright found persuasive the analysis of the issue by Judge Patel in the Northern District of California in *Stender v. Lucky Stores, Inc.,* 780 F.Supp. 1302 (N.D.Cal.1992).

The language of the Act and the legislative history do not speak with clarity to the

issue of retroactivity. It appears that the issue was deliberately left undecided; Congress left the issue to be determined by the federal courts, with different factions each hoping that their view on application of the Act would prevail. *U.S. v. Department of Mental Health*, 785 F.Supp. 846, 850 (E.D.Cal.1992). Therefore, the traditional means of statutory interpretation are of no utility here, since such methods search for interpretation that is consistent with the intent of Congress. Here, intent was absent; political realities resulted in Congress delegating to the courts the authority to decide how the Act should be applied. *Id.* at 850–51. This court must then look to the controlling Ninth Circuit precedent to determine retroactive or prospective application.

The Supreme Court has spoken with more than one voice on the issue. In *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Court held that congressional enactments will not be construed to have retroactive effect unless their language requires that result. In *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Court held that courts should apply the law that is in effect at the time of its decision, unless to do so would result in manifest injustice. In this case, *Bradley* argues for application of the Civil Rights Act of 1991 to the plaintiff's claim. Justice Scalia has written that *Bowen* and *Bradley* are "in irreconcilable contradiction, and have spawned courts of appeal's opinions to match." *Kaiser Aluminum and Chemical Corp. v. Bonjorno*, 494 U.S. 827, 841, 110 S.Ct. 1570, 1579, 108 L.Ed.2d 842 (1990). The court chose not to reconcile the two lines of reasoning since, in that case, the legislative intent was clear. *Id.* at 837, 110 S.Ct. at 1577.

The Ninth Circuit favors the approach of *Bradley* over that of *Bowen*. In *Federal Deposit Ins. Corp. v. New Hampshire Ins. Co.*, 953 F.2d 478 (9th Cir.1991), the court noted the apparent tension between the two Supreme Court cases, and chose to follow *Bradley* in finding that the limitations period in the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") applied retroactively. The court referred to its holding in *Gonzalez v. Aloha Airlines, Inc.*, 940 F.2d 1312 (9th Cir.1991), where the court followed *Bradley* to apply retroactively a two year statute of limitations under the Employee Protection Program of the Airline Deregulation Act. *See also, Commonwealth of Northern Mariana Islands v. Kawano*, 917 F.2d 379 (9th Cir.1990) (following *Bradley*); *Kruso v. Int'l Telephone & Telegraph Corp.*, 872 F.2d 1416, 1424–25 (9th Cir.1989) (same); *De Gurules v. Immigration & Naturalization Service*, 833 F.2d 861, 863 (9th Cir.1987) ("a fundamental principle of our jurisprudence is that a court will apply the law as it exists when it is rendering its decision."); *In re Rubin*, 769 F.2d 611, 614 (9th Cir.1985) ("Absent manifest injustice or congressional intent to the contrary, we generally apply the law as it exists when we render our decision."). The Northern District, Eastern District, and recently the Southern District of California have recognized that the Ninth Circuit follows the *Bradley* approach. *Stender*, 780 F.Supp. at 1307; *Department of Mental Health*, 785 F.Supp. at 852; Memorandum Decision and Order in *Jones v. Garrett*, Southern District Civil No. 91–0707, entered June 12, 1992.

Furthermore, the rights at issue here, i.e., the right to a jury trial and to compensatory damages, are remedial and procedural in nature. *Wabol v. Villacrusis*, 908 F.2d 411, 422 (9th Cir.1990) ("The jury trial guarantee is primarily a procedural right...."). The right to compensatory damages "does not create new substantive rights or duties[,] it merely provides an additional remedy (compensatory damages) for violation of an existing right (to be free from discrimination)." *Department of Mental Health*, 785 F.Supp. at 853. Procedural rights are more commonly applied retroactively:

> when a statute is addressed to remedies and procedures and does not otherwise alter substantive rights, it will be applied to pending cases. The purpose behind this rule of construction is clear. Non-retrospective application of a statute

'prevents the assigning of a quality or effect to acts or conduct which they did not have or did not contemplate when they were performed.' This danger is not present where statutes merely effect remedies or procedures. [citations omitted throughout]

*Friel v. Cessna Aircraft Co.,* 751 F.2d 1037, 1039 (9th Cir.1985).

In order to determine whether manifest injustice would result from retroactive application, *Bradley* requires the court to consider the nature of the parties, the nature of their rights, and the nature of the impact of the change in law upon those rights. *Bradley,* 416 U.S. at 717, 94 S.Ct. at 2019. First, this case does not resemble "mere private cases between individuals," where the court should struggle against retroactive application. *Id.* at 718, 94 S.Ct. at 2019–20. Rather it involves the role of federal law in deciding an issue of great public concern: the procedural rights afforded victims of discrimination.

Second, manifest injustice may also result if retroactive application would "deprive a person of a right that had matured or become unconditional." *Id.* at 720, 94 S.Ct. at 2020. Plaintiff's rights are enhanced, not limited, by retroactive application of the Act. The defendant has not argued this issue, but I note that a defendant has no unconditional right to limit the remedy available to a plaintiff. As Judge Patel observed, "the Supreme Court has upheld the retroactive application of laws which enhance economic penalties for conduct which occurred prior to the enactment of a statute." *Stender,* 780 F.Supp. at 1308, *citing, Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 728–31, 104 S.Ct. 2709, 2717–19, 81 L.Ed.2d 601 (1984).

Third, the Supreme Court feared that manifest injustice might result "from the possibility that new and unanticipated obligations may be imposed upon a party with-

out notice or an opportunity to be heard." *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2020. This element was addressed by the court in *Department of Mental Health:*

> The parties retain their due process rights to fully litigate the issues, the only difference is that Intervenor will now be entitled to a jury trial on the issues of intentional discrimination and compensatory damages (a right long guaranteed in most litigation by the Constitution and jealously guarded in the law) and to be fully compensated for any harm she suffered by reason of discrimination. By the same token, Defendant retains all its rights not to be subjected to liability, unless and until Intervenor and/or Plaintiff bear the burden of proof and demonstrate intentional discrimination. Compensatory damages may only be recovered where "Respondent ... engaged in unlawful intentional discrimination...." 1991 Civil Rights Act Section 102(a) amending 42 U.S.C. § 1981a.

785 F.Supp. at 854. There has been no showing in this case that provision of a jury trial and compensatory damages will unfairly impose new and unanticipated obligations on either party. In conclusion, I find that manifest injustice would not result from the retroactive application of the Civil Rights Act of 1991.[2]

For the foregoing reasons, the Navy's motion to dismiss is denied. The denial is without prejudice to raise the issue again if the Ninth Circuit rules directly on this point. The plaintiff's objections to the declarations submitted by the Navy are denied as moot.

IT IS SO ORDERED.

---

**2.** Counsel for the Navy has informed chambers of a recent Fifth Circuit case holding that § 101 of the Act did not apply retroactively. *Johnson v. Uncle Ben's, Inc.,* 965 F.2d 1363 (5th Cir.1992). The court recognized that the Fifth Circuit has "straddle[d] the divide between *Bowen* and

*Bradley.*" Since the Ninth Circuit has not engaged in such gymnastics, and has followed *Bradley* with great consistency, *Johnson* is distinguishable. The unanimity of the district courts within the Ninth Circuit supports this interpretation.