YUKON–KUSKOKWIM HEALTH
CORPORATION, INC.,
Plaintiff,

v.

TRUST INSURANCE PLAN FOR
SOUTHWEST ALASKA,
Defendant.

TRUST INSURANCE PLAN FOR
SOUTHWEST ALASKA, Third–
Party Plaintiff,

v.

PROVIDENT LIFE & ACCIDENT
INSURANCE COMPANY, Third–
Party Defendant.

No. A92–747 CIV (JWS).

United States District Court,
D. Alaska.

Feb. 14, 1994.

Lloyd Benton Miller of Sonosky, Chambers, Sachse, Miller, Munson & Clocksin, for plaintiff Yukon–Kuskokwim Health Corp., Inc.

William K. Jermain of Jermain, Dunnagan & Owens, P.C., for defendant and third-party plaintiff Trust Ins. Plan for Southwestern Alaska.

John Wendlandt of Hughes, Thorsness, Gantz, Powell & Brundin, for third-party defendant Provident Life & Acc. Ins. Co.

Susan Lindquist of the U.S. Atty. Office, for U.S.

### ORDER FROM CHAMBERS

SEDWICK, District Judge.

### INTRODUCTION

Plaintiff Yukon Kuskokwim Health Corporation (YKHC) sues defendant Trust Insurance Plan of Southwest Alaska (TIPSA) to recover payments for health services it provided Native Alaskans after November 23, 1988. TIPSA is a trust created under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA)

and comprised of multiple private and public employers located in southwest Alaska. Pursuant to this court's Order dated May 27, 1993, the parties have filed several motions for summary judgment attempting to narrow and define the scope of the issues presented by YKHC's complaint. Oral argument was heard on January 11, 1994, on YKHC's Motion for Partial Summary Judgment Regarding the "Statutory Exceptions" to the Right of Recovery Under Section 206 of the Indian Health Care Improvement Act, and its Motion for Partial Summary Judgment Regarding TIPSA's Defense of Claim Procedures.

Defendants have also filed motions for partial summary judgment concerning YKHC's standing to assert claims prior to 1992, and challenging the United States' ability to differentiate between private insurers and the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS). YKHC has cross-moved for partial summary judgment dismissing TIPSA's equal protection affirmative defense. The parties did not request oral argument on the issues of standing or equal protection.

## FACTS

YKHC is a consortium of 50 Alaska Native Village tribes located near the Yukon and Kuskokwim Rivers. YKHC administers health care services to Alaska Natives through operation of the Yukon–Kuskokwim Delta Regional Hospital (Hospital) and the Yukon–Kuskokwim Dental Clinic (Dental Clinic). YKHC has operated the Dental Clinic since prior to November 23, 1988, but assumed operation of the Hospital on October 1, 1991. Prior to that date the Indian Health Service (IHS) operated the Hospital.

YKHC operates under an Indian Self–Determination Act contract with the Indian Health Service and Public Health Service of the United States Department of Health and Human Services (Contract No. 243–89–0001). Since November 23, 1988, YKHC and/or IHS have provided health care services to Alaska Natives insured by TIPSA, a trust comprised of several southwestern Alaska employers with high numbers of Native employees.[1] TIPSA provides group insurance to its sponsors' employees.[2]

YKHC required all Alaska Natives to sign a document entitled "Authorization to Furnish Information and Assignment of Benefits for Private Insurance" prior to receiving health care. The document assigned the individual's insurance claims to YKHC. YKHC has submitted claims for payment to TIPSA for health care services provided to Alaska Natives. TIPSA routinely denied those claims, based upon its conclusion that its Alaska Native beneficiaries are not legally obligated to pay for health services received from government contractors such as YKHC. TIPSA excludes coverage of:

> Services or supplies for which there is no legal obligation to pay, or expenses which would not be made except for the availability of benefits under this plan or for which no charges are made.

> \*   \*   \*   \*   \*   \*

> Services furnished by or for the United States Government or any other government, unless payment is legally required.

> \*   \*   \*   \*   \*   \*

> Supplies or services furnished by or payable under any plan or law of any Federal or State, Dominion or Provincial government or furnished by a County, Parish, Borough or Municipal *hospital* when there is no legal requirement to pay for such supplies or services, except *Medicare,* CHAMPUS or where the law does not permit this type of exclusion.

1. As of May 1, 1991, the employers/sponsors participating in TIPSA were: the City of Bethel, Akiachak Limited, A.V.C.P. Inc., A.V.C.P. Housing Authority, Bethel Native Corporation, Emmonak Corporation, Kashunamuit School District, Nunam Kitutsisi, Kuskokwim Native Association, Kuskokwim Fishermen's Co-op, Yupiit School District, the City of Aniak, and Orutsaramuit Native Council.

2. TIPSA originally contracted with third-party defendant Provident Life & Accident Insurance Company (Provident) for medical and dental insurance coverage. On October 1, 1990, TIPSA converted to a program in which it administers and funds insurance claims.

TIPSA Group No. 1100 Employee Benefits Plan, October 1, 1990 (emphasis in original).[3]

TIPSA also denied YKHC's claims as having been improperly submitted. TIPSA requires that the individual beneficiary, rather than the health care provider, submit the claim and that the employer verify the employee's coverage. TIPSA sends any claim received from a health care provider to the individual, along with a "revocation kit," which includes a notice informing the individual that if he or she files a claim and it is required to pay, premium costs will be raised and the individual will suffer reduced medical options. The notice concludes:

> This means that if you don't file a claim with the insurance company for services provided to you by the Indian Health Service, neither you nor your insurance company [TIPSA] can be forced to pay for such services.

On October 29, 1992, Congress passed the Indian Health Amendments of 1992, Pub.L. No. 102–508, § 209, 106 Stat. 4526, 4551 (1992), which amended the Indian Health Care Improvement Act, 25 U.S.C. § 1621e(a), to expressly provide tribal organizations with a right of recovery to collect the reasonable costs of health care provided to Native Americans and Alaska Natives from third party insurers. On December 9, 1992,

YKHC initiated this suit to recover over $700,000 in unpaid medical claims for services allegedly provided to Alaska Natives insured by TIPSA arising after November 23, 1988. The United States has intervened in the action, and also asserts claims against TIPSA for services allegedly provided to Alaska Natives insured by TIPSA.

## DISCUSSION

YKHC sues TIPSA, pursuant to 25 U.S.C. § 1621e, to recover the reasonable cost of health care provided to Alaska Native TIPSA beneficiaries from November 23, 1988, to the present.[4] The Indian Health Amendments of 1992 amended § 1621e to expressly permit Indian tribes and tribal organizations to recover health care expenses to the same extent that the individual recipient, or nongovernmental provider of such services, could receive reimbursement, assuming that the services had been provided by a nongovernmental provider, that the individual was required to pay for the services, and did pay for the services. Additionally, the Indian Health Amendments of 1992 omitted the term "political subdivision" from 25 U.S.C. § 1621e(b) and added § 1621e(f).[5]

TIPSA's answer asserts several affirmative defenses to challenge YKHC's claims on stat-

---

**3.** YKHC also submits a document entitled "Trust Insurance Plan for Southwest Alaska Your Summary Plan Description Group Policy Number 1100." The document states:

> The plan does not pay benefits for:
> 4. any supplies or services for which no charge is made;
> 5. any supplies or services for which the insured person is not required to pay;
> 6. any supplies or services furnished by or payable under any plan or law of any Federal or State, Dominion or Provincial government or furnished by a County, Parish, Borough or Municipal hospital when there is no legal requirement to pay for such supplies or service except:
> i) Medicare
> ii) the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS)
> iii) where the law does not permit this type of exclusion

**4.** Section 1621e(a), as added to the Indian Health Care Improvement Act by the Indian Health Amendments of 1988, Pub.L. No. 100–713, § 206, 102 Stat. 4811 (1988), provides:

> (a) Except as provided in subsection (f) of this section, the United States, an Indian tribe, or a tribal organization, shall have the right to recover the reasonable expenses incurred by the Secretary, an Indian tribe, or a tribal organization, in providing health services, through the Service, an Indian tribe, or a tribal organization, to any individual to the same extent that such individual, or any nongovernmental provider of such services, would be eligible to receive reimbursement or indemnification for such expenses if—
> (1) such services had been provided by a nongovernmental provider, and
> (2) such individual had been required to pay such expenses and did pay such expenses.

**5.** Section 1621e(f) provides:

> (f) Coverage under self-insurance plan funded by Indian tribe or tribal organization
> The United States shall not have a right of recovery under this section if the injury, illness, or disability for which health services were provided is covered under a self-insurance plan funded by an Indian tribe or tribal organization.

utory grounds. First, TIPSA claims that § 1621e, as originally enacted, did not grant YKHC the right to assert claims for medical services provided to its Alaska Native beneficiaries. Second, TIPSA believes YKHC's claims must be denied because the political subdivision and self-insured exceptions contained in 25 U.S.C. §§ 1621e(b) and (f), respectively, apply, although it has conceded that the political subdivision exception does not bar all of YKHC's claims. Third, TIPSA contests liability because YKHC allegedly failed to follow valid claim procedures. Fourth, TIPSA alleges that § 1621e violates its right to equal protection under the Fifth Amendment of the United States Constitution.

## I. *RETROACTIVITY*

TIPSA argues that from November 23, 1988, the date 25 U.S.C. § 1621e(a) became effective, until Congress enacted the Indian Health Amendments of 1992, tribal organizations such as YKHC did not have a statutory right to recover health care costs provided to Alaska Natives. Though TIPSA refers to YKHC's lack of "standing," its argument is better characterized as asserting that YKHC has failed to state a claim for relief under § 1621e(a) prior to October 29, 1992. TIPSA does not deny YKHC provided services to its Alaska Native beneficiaries or that TIPSA denies coverage for those claims. YKHC clearly has standing to assert its claims to recover the reasonable costs of those health services. The issue is whether YKHC may take advantage of § 1621e to avoid TIPSA's policy exclusions. This depends upon whether the 1992 amendments apply retroactively.[6]

The unsettled nature of retroactive application of federal laws is well documented. *See Kaiser Aluminum and Chem. Corp. v. Bonjorno*, 494 U.S. 827, 841, 110 S.Ct. 1570,

1579, 108 L.Ed.2d 842 (1990) (Scalia, J., concurring); *Kent v. Howard*, 801 F.Supp. 329, 335 (S.D.Cal.1992). The genesis of the dispute is found in the Supreme Court's opinions in *Bradley v. Richmond Sch. Bd.*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), and *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988). In *Bradley*, the Supreme Court adopted a presumption in favor of retroactive application of new laws "unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." 416 U.S. at 711, 94 S.Ct. at 2015. In *Bowen*, the Court stated: "[r]etroactivity is not favored in the law. Thus congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." 488 U.S. at 208, 109 S.Ct. at 471. The tension between *Bradley* and *Bowen* was recognized in *Kaiser Aluminum and Chem. Corp. v. Bonjorno*, 494 U.S. 827, 841, 110 S.Ct. 1570, 1579, 108 L.Ed.2d 842 (1990), but not resolved because in that instance clear congressional intent, gleaned from the plain language of the statute, made manifest that the law did not apply prior to its effective date.[7]

The Ninth Circuit also has published contradictory decisions regarding retroactivity. *Compare Nelson v. Ada*, 878 F.2d 277 (9th Cir.1989), *with Federal Deposit Ins. Corp. v. New Hampshire Ins. Co.*, 953 F.2d 478 (9th Cir.1991). However, the Ninth Circuit has largely applied *Bradley* in recent cases. *Federal Deposit Ins. Corp. v. New Hampshire Ins. Co.*, 953 F.2d at 487; *Gonzalez v. Aloha Airlines*, 940 F.2d 1312, 1316 (9th Cir.1991); *Commonwealth of Northern Mariana Islands v. Kawano*, 917 F.2d 379 (9th Cir.1990), *cert. denied*, 499 U.S. 910, 111 S.Ct. 1116, 113 L.Ed.2d 224 (1991). This

---

6. In its Reply to Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment on the Issue of Standing (Docket No. 62), TIPSA challenges YKHC's ability to recover for the period between November 23, 1988, and October 1, 1991, the date YKHC assumed operation of the Hospital from IHS. TIPSA also raises a partial defense of satisfaction for the first time. The court finds these issues to be outside TIPSA's motion and, therefore, expresses no opinion on them.

7. The Supreme Court currently has accepted another opportunity to resolve the conflict between *Bradley* and *Bowen*. *Rivers v. Roadway Express, Inc.*, —— U.S. ——, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993); *Landgraf v. USI Film Products*, —— U.S. ——, 113 S.Ct. 1250, 122 L.Ed.2d 649 (1993).

court joins other district courts within the circuit that have chosen to follow the Ninth Circuit's most recent pronouncements on retroactivity and applies the *Bradley* presumption. *Kent v. Howard*, 801 F.Supp. 329, 335 (S.D.Cal.1992); *Sanders v. Culinary Workers Union Local No. 226*, 804 F.Supp. 86, 94 (D.Nev.1992), *aff'd on other grounds*, *Sanders v. Ogden Allied Leisure Services, Inc.*, 5 F.3d 539 (9th Cir.1993); *Stender v. Lucky Stores, Inc.*, 780 F.Supp. 1302, 1307 (N.D.Cal. 1991).[8]

### A. Statutory Direction and Legislative History

▮▮▮ *Bradley* creates a rebuttable presumption in favor of retroactive application of new laws such that "even where the intervening law does not explicitly recite that it is to be applied to pending cases, it is to be given recognition and effect." 416 U.S. at 715, 94 S.Ct. at 2018. The presumption may be overcome by a "fair indication that the statute properly construed has only prospective effect." *Campbell v. United States*, 809 F.2d 563, 572 (9th Cir.1987) (quoting *Litton Sys. v. American Tel. and Tel. Co.*, 746 F.2d 168, 174 (2d Cir.1984)).

#### 1. Plain Language of the Statute

As with any issue of statutory construction, the court begins with the express language of the statute. *See Kaiser, supra; Estate of Reynolds v. Martin*, 985 F.2d 470, 473 (9th Cir.1993). The Indian Health Amendments of 1992, Pub.L. No. 102–573, 106 Stat. 4526 (1992), did not contain any provision setting forth a singular effective date, nor does it include any reference to application of its provisions after enactment. Several sections within Public Law 102–573 do contain specific effective dates for certain sections. *See* Pub.L. No. 102–573, §§ 102(d), 201(b), 602(a)(2), 106 Stat. 4526 (1992). Section 209, amending 25 U.S.C. § 1621e, does not.

Recently, the Ninth Circuit construed the Civil Rights Act of 1991 to apply retroactively. The Court held that inclusion of several statutory provisions detailing prospective application required that the remainder of the statute be applied retroactively. *Estate of Reynolds v. Martin*, 985 F.2d 470 (9th Cir. 1993), *reh'g en banc denied*, 994 F.2d 690 (9th Cir.1993). In the Civil Rights Act of 1991, Congress included a provision entitled "Effective Date" that provided: "Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." The court found significant the phrase "[e]xcept as otherwise specifically provided." Applying rules of statutory construction requiring courts to afford meaning to every clause and word in the statute, the court reasoned that retroactive application was required in light of the specific sections which required prospective effect. *Id.* at 473.

The Indian Health Amendments of 1992 does not contain an effective date for the entire statute, though it does contain several effective dates for certain sections of the Act that delay the effective date of the specific section. *See* Pub.L. No. 102–573, §§ 102(d), 201(b), 602(a)(2), 106 Stat 4526 (1992). Yet, nowhere does the Indian Health Amendments of 1992 provide that "except as specifically otherwise provided [the Act] shall take effect upon enactment." Therefore, prospective application of the statute would not render any section redundant, and does not present the situation created by the Civil Rights Act of 1991. The court finds that the plain language of the statute neither supports nor negates retroactive application.

#### 2. Legislative History

The legislative history of the Indian Health Amendments of 1992 provides no indication that § 209 is to be applied prospectively. The Senate Report notes that amendment of 25 U.S.C. § 1621e was necessary because "[t]ribal health contractors have informed the Committee that certain insurance companies refuse to reimburse the contractors for ser-

---

**8.** The Ninth Circuit recognizes the inconsistent nature of its precedent in this area of the law. In *Estate of Reynolds v. Martin*, 994 F.2d 690, 692 (9th Cir.1993), four judges dissenting from the decision to deny a hearing *en banc*, noted that the Ninth Circuit has "generated a conflicting set of decisions regarding the application of a new statute to cases pending at the date of enactment."

vices provided to Indian and Alaska Native policyholders." S.Rep. No. 102–392, 102nd Cong., 2d Sess. (1992), *reprinted in* 1992 U.S.C.C.A.N. 3943, 3962. The Senate Report further states that:

> Under the Indian Health Care Improvement Amendments of 1988 there is a right of recovery against private insurers with respect to expenses incurred by the Secretary in providing health services. Congress intended this right to include tribal governments that contract with the government to provide health care as well as the Secretary.
>
> \* \* \* \* \* \*
>
> Therefore, the Committee Amendment includes language which clarifies that tribal government health contractors or tribal contractors have the same right to recover against private insurance companies that the IHS enjoys.

*Id.* at 3962–63.

Senator Daniel Inouye, chairman of the Senate Select Committee on Indian Affairs and co-sponsor of the Indian Health Amendments of 1992, said:

> As I noted earlier, section 209 contains language to provide tribal self-determination contractors with the right of recovery for third party insurance purposes. The tribal right to recovery encompasses all expenses which arose under a program administered by the tribal health contractor, including those which arose prior to the effective date of the applicable self-determination contract. This provides an incentive for the collection of existing claims, and prevents insurance companies from receiving a windfall from past discrimination against Indian policyholders.

The effective date of this provision was incorrectly noted in my earlier statement. Section 209 of the Indian Health Care Improvement Act Amendments of 1992 takes effect November 23, 1988. November 23, 1988, is the effective date of section 206 of the act, which section 209 of the 1992 amendments clarifies, to further carry out the intent of the Congress. Although original section 206 has not raised problems for most third-party payors, in a few instances such payors have refused to meet their statutory obligation to pay, resulting in many accumulated claims. The section 209 clarifying amendment will assure that these payors do not escape their obligations under the law.

138 Cong.Rec. S18314–02 (Oct. 29, 1992).

Far from suggesting that § 209 be applied prospectively, the legislative history of the 1992 amendment indicates that Congress intended retroactive application to remedy unintended practices that had developed upon enactment of § 1621e. Therefore, the court finds that neither the language of the statute nor its legislative history precludes retroactive application.[9]

**B.** *Manifest Injustice*

■ In *Bradley,* the Court applied three factors to determine whether manifest injustice would result from retroactive application of a statute: the nature of the parties, the nature of their rights, and the nature of the impact of the change in law upon those rights. 416 U.S. at 717, 94 S.Ct. at 2019.

*1. Nature of the Parties*

■ In *Bradley,* the Court counseled against retroactive application of laws in "mere cases between individuals." *Id.* at 718, 94 S.Ct. at 2019.[10] There, school chil-

---

**9.** Though the court here applies *Bradley* under one line of Supreme Court and Ninth Circuit precedent, alternatively it concludes that the legislative history of § 209 of the Indian Health Amendments of 1992 mandates retroactive application. Under *Kaiser,* one need not navigate between the Scylla and Charybdis presented by *Bowen* and *Bradley* if congressional intent is clear. *Kaiser,* 494 U.S. at 837, 110 S.Ct. at 1577. The Ninth Circuit has recently applied the holding of *Kaiser* to the Civil Rights Act of 1991. *Estate of Reynolds v. Martin,* 985 F.2d 470 (9th

Cir.1993). In this instance, congressional intent is not self evident from the plain language of the statute, but it is made clear by the legislative history. *See* S.Rep. No. 102–392, 102 Cong.2d Sess. (1992), *reprinted in* 1992 U.S.C.C.A.N. 3943, 3962–63; 138 Cong.Rec. S18314–02 (Oct. 29, 1992).

**10.** This consideration is taken from Chief Justice Marshall's statement that:

> In mere private cases between individuals, a court will and ought to struggle hard against a

dren who had successfully challenged desegregation within the City of Richmond sought attorney fees from the city's school board. The Court held that the parties, one of which was a public entity, were not in a "routine private lawsuit." *Id.* The Court recognized that desegregation was a "national policy of high priority" and statutes addressing matters of "great national concern" merited retroactive application. *Id.* at 719, n. 27, 94 S.Ct. at 2020, n. 27. However, where both litigants are private parties, that fact may negate the significance of the statute. *Raya v. Maryatt Indus.*, 829 F.Supp. 1169, 1174 (N.D.Cal.1993) (private nature of the parties negated matters of great national concern addresses in the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*)

In the instant case, the parties involved are two private entities, and at first blush it would appear that the nature of the parties weighs against retroactive application of the 1992 amendment. Although TIPSA includes several political subdivisions as members, for reasons explained in Section II.A., *infra*, the court treats TIPSA as a private party rather than a governmental entity. Likewise, YKHC is a private party. Moreover, one may classify this action as a simple contract dispute. Though important, the commercial rights at stake are not akin to the fundamental rights implicated in *Bradley*.

The history of the 1992 amendments, however, makes clear that the private nature of the parties involved should not control. The 1992 amendments are meant to assure Indian tribes and tribal organizations the same right of recovery established by Congress in 1988. The plaintiff here is a private party, but one cloaked in the sovereign's concern for its unique relationship with Native Americans and Alaska Natives, a relationship that includes an obligation to oversee and provide health care. *See* 25 U.S.C. § 1602(a). Congress enacted § 1621e as part of an effort to improve health care for Native Americans and Alaska Natives, and specifically to preserve scarce financial resources for their

construction which will, by a retrospective operation, affect the rights of parties, but in great national concerns, where individual rights ... are sacrificed for national purposes, ... the court must decide according to existing laws.

health care by precluding insurers from collecting premiums only to deny coverage for medical services provided at federal institutions that were not billed to their Native American or Alaska Native beneficiaries. S.Rep. No. 100–508, 100th Cong., 2d Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 6183. Moreover, the United States has intervened in the case to assert claims on its own behalf and on behalf of YKHC. Thus, the true nature of the parties discloses that plaintiff YKHC is a key player in the advancement of the interests of the United States in its capacity as provider of health care to Native Americans and Alaska Natives. The court concludes that the nature of the parties militates in favor of retroactive application of the 1992 amendments.

### 2. *Nature of the Rights*

■ The Court in *Bradley* also noted that manifest injustice could occur if retroactive application of a law affected a matured or unconditional right. *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2020. A corollary to this rule is that substantive statutes are given prospective effect because retroactive application is manifestly unjust by definition. "A statute creating new causes of action ... cannot be labelled a mere remedial statute; it bestows new substantive rights upon those the statute is designed to protect." *Raya v. Maryatt Indus.*, 829 F.Supp. at 1174 (construing the Americans with Disabilities Act).

TIPSA contracted to provide insurance for employers with high numbers of Alaska Native employees. TIPSA specifically excluded coverage for medical services where Alaska Natives were not legally required to pay for the services or received the services at a federal facility as part of a federal policy not to seek payment from Native Americans or Alaska Natives. 25 U.S.C. § 1683. Thus, TIPSA contracted not to provide insurance for medical services provided to Alaska Natives by the federal government or its contractors.

*United States v. The Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801).

Though the 1992 amendment to § 1621e provides new parties with a new cause of action, it does not create a new liability, for that was accomplished in 1988. The Indian Health Care Amendments of 1988 effectively amended TIPSA's insurance policy by requiring assumptions that the health care recipient received care at a nongovernmental hospital, that he was required to pay, and that he had paid for the medical services. 25 U.S.C. § 1621e(a). This was a substantive change for it altered TIPSA's contractual obligations and exposed it to new claims. However, TIPSA's right to rely on its contract is not unjustly affected by retroactive application of the 1992 amendment.

### 3. Nature of the Impact of the Change in Law

■ Courts should avoid retroactive application of laws that would impose "new and unanticipated obligations" on individuals. *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2021. The Ninth Circuit has instructed that "[t]his inquiry focuses on whether the new statutory obligation, if known would have caused the defendant to alter its conduct." *Campbell*, 809 F.2d at 576.

In *Raya v. Maryatt Indus.*, 829 F.Supp. 1169 (N.D.Cal.1993), an employee sued her employer under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (ADA), enacted as part of the Civil Rights Act of 1991. Prior to enactment of the ADA, the Rehabilitation Act of 1973 provided the only federal proscription against disability discrimination. The Rehabilitation Act applied only to the federal government, government contractors, and recipients of federal assistance; it did not apply to private employers. The court noted that the ADA filled "a gap in existing law." *Id.* at 1174. Because private employers were previously not liable for disability discrimination under federal law, retroactive application of the ADA would result in manifest injustice because it imposed "an additional or unforeseeable obligation upon it." *Id.* (quoting *Bradley*, 416 U.S. at 721, 94 S.Ct. at 2021).

In the case at bar, the impact of the change resulting from retroactive application of the Indian Health Amendments of 1992 is minimal. Prior to the amendment tribal organizations could not recover the reasonable costs of health care provided to Alaska Native beneficiaries, but the United States could. As stated above, the 1992 amendment did not impose any new obligation upon TIPSA. Since enactment of § 1621e in 1988, TIPSA has been liable to the United States for reasonable costs incurred by YKHC in providing health care to Alaska Natives. Indeed, the United States has intervened in this case to assert claims on its own behalf as well as on behalf of YKHC.

The 1992 amendment to § 1621e may have permitted Indian tribes and tribal organizations to recover under § 1621e(a), but it did nothing to increase TIPSA's pre-existing liability for medical services performed by YKHC.[11] Any alteration in TIPSA's conduct should have occurred when Congress imposed the underlying liability rather than when it expanded the class of entities able to recover.

Considering the nature of the parties provides some support for retroactive application of the 1992 amendments, and the remaining two considerations strongly support retroactive application. Section 209 of the Indian Health Amendments of 1992 did not destroy any vested or matured right, nor did it impose any new or unanticipated obligations on TIPSA, because the liability existed prior to the amendment. Therefore, the court gives effect to the *Bradley* presumption and applies § 1621e as amended.

## II. STATUTORY EXCEPTIONS

### A. Public Subdivisions

■ TIPSA asserts that YKHC may not recover against it because it is partly comprised of political subdivisions. Section 1621e(b) precludes any recovery against a State under § 1621e(a) unless the health services giving rise to the claim were covered by (1) workers' compensation laws or (2) a non-

---

**11.** According to Senator Inouye, many insurers recognized that the 1988 statute amending the Indian Health Care Improvement Act gave tribal organizations a right of recovery. *See* 138 Cong. Rec. S18314–02 (Oct. 29, 1992).

fault automobile accident insurance plan or program. 25 U.S.C. § 1621e(b). Prior to 1992, § 1621e(b) imposed similar restrictions upon recovery of health costs against a political subdivision. TIPSA believes that, for the period between November 23, 1988, and October 29, 1992, the effective date of the Indian Health Amendments of 1992, no health care provider may recover claims under § 1621e(a) against its constituent political subdivision employers. Importantly, TIPSA does not contend that TIPSA itself was transformed into a political subdivision by the inclusion of political subdivision employers.[12] TIPSA concedes that the § 1621e(b) restriction of recovery from political subdivisions is inapplicable as against TIPSA's private employers. TIPSA further concedes that the Indian Health Amendments of 1992 removed any limitation upon recovery against TIPSA, or its constituent members, based upon § 1621e(b).

TIPSA deduces that, because a health care provider was not permitted to recover from a political subdivision prior to some point in 1992, the political subdivision ought not lose that protection when it joins an ERISA trust. However, this matter is governed ERISA. TIPSA is an ERISA welfare plan, or an employee welfare benefit plan, as those terms are defined in 29 U.S.C. § 1002(1). Employee benefit plans are defined to include welfare plans such as TIPSA. 29 U.S.C. § 1002(3). ERISA provides that "[a]n employee benefit plan may sue or be sued under this subchapter as an entity." 29 U.S.C. § 1132(d)(1). Moreover, ERISA provides that "[a]ny money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capaci-

ty under this subchapter." 29 U.S.C. § 1132(d)(2).[13]

ERISA created a separate legal entity for trusts formed under its provisions, distinct from the employers/sponsors who fund the trust. See Wildbur v. ARCO Chem. Co., 974 F.2d 631, 645 (5th Cir.1992). YKHC does not sue a political subdivision, but rather an ERISA trust that includes political subdivisions. Section 1621e(b) does not apply to any claims against TIPSA, nor does it preclude recovery against TIPSA for claims emanating from care provided to employees of political subdivisions.

**B. Self–Insurance**

■ TIPSA contends that 1621e(f), also enacted as part of the Indian Health Amendments of 1992, precludes any right of recovery by YKHC for health services provided to TIPSA beneficiaries. Section 1621e(f) provides: "[t]he United States shall not have a right of recovery under this section if the injury, illness, or disability for which health services were provided is covered under a self insurance plan funded by an Indian tribe or tribal organization."

TIPSA's defense ignores the language of the statute. Section 1621e(f) limits the United States' right of recovery. YKHC is not the United States, but rather a "tribal organization." As amended by the Indian Health Amendments of 1992, § 1621e distinguishes between the separate terms "United States," "Indian tribes," and "tribal organizations."[14]

TIPSA attempts to bring YKHC within the scope of § 1621e(f) by arguing that YKHC's standing to maintain this action is derivative of, and dependant upon, the ability of the United States to sue. It is mistaken. Under the Indian Health Amendments of 1992, Congress amended § 1621e to grant the United States, an Indian tribe or a tribal

---

**12.** TIPSA has identified four employers which it considers political subdivisions: the City of Bethel, the City of Aniak, the Kashunamuit School District, and the Yupiit School District.

**13.** TIPSA argues that, because its claim payment experience will be reflected in premiums charged to its constituent employers, the effect of making TIPSA pay is to make its sponsors, including the political subdivisions, pay as well. That may be,

but if so, it is a consequence of the employers' decision to enter such a contractual arrangement. No political subdivision was required to join TIPSA.

**14.** The motion for summary judgment is brought solely by YKHC. The court expresses no opinion on the effect of 25 U.S.C. § 1621e(f) upon the United States' claims against TIPSA.

organization the right to recover costs incurred in providing health services to Alaska Natives. A tribal organization's right of recovery under § 1621e, as amended, is an independent one. Section 1621e(f) does not preclude YKHC's action.

## III. *CLAIM PROCEDURE*

■ YKHC also moves for summary judgment to dismiss TIPSA's affirmative defense that YKHC has failed to comply with TIPSA's claim procedures. YKHC claims that TIPSA's claim procedures violate 25 U.S.C. § 1621e(c)'s proscription against any "provision of any contract entered into or renewed after November 23, 1988, [which] prevent[s] or hinder[s] the right of recovery of … a tribal organization." TIPSA believes that § 1621e(c) does not apply to it, because it has utilized the same claims procedures prior to November 23, 1988.

Though the parties dispute the application of § 1621e(c), the court finds that issues raised by TIPSA's claim procedures, both contractual and as applied, are more appropriately resolved by reference to § 1621e(a). TIPSA contends that YKHC failed to comply with valid claim procedures and, therefore, there are no valid claims that it is required to pay. TIPSA's claim procedures are set forth in "Trust Insurance Plan for Southwest Alaska Your Summary Plan Description, Group Policy Number 1100," apparently dated October 1991; and "TIPSA Group No. 1100 Employee Benefits Plan, October 1, 1990." These claim procedures require only that the employee complete a claim form available from TIPSA Group No. 1100 and attach all necessary documentation, which is defined to include all information regarding the services rendered. These documents also require an "Explanation of Benefits" if another plan is the primary payor.

The employee submits the claim to his or her employer to allow the employer to verify that the employee is covered by TIPSA. Upon employer verification, CALCO, Inc.,

the trust administrator, certifies the individual's eligibility. YKHC complains that TIPSA refuses to recognize claims submitted directly by health care providers regardless of assignment of claims by the beneficiary, and further refuses to provide it with claim forms. YKHC also challenges TIPSA's practice of sending revocation kits to beneficiaries with claims directing them not to file claims.[15]

Distilled to its essence, TIPSA's affirmative defense is based on the failure of the individual beneficiaries to file claims for the health services they received from YKHC. As noted above, TIPSA is of the opinion that so long as the beneficiary does not file a claim, the health care provider has no right of recovery. TIPSA explains that it provides only supplemental insurance to allow Alaska Natives a broader choice in selecting health services. TIPSA provides insurance that excludes coverage for all services and supplies care for which "there is no legal obligation to pay, or expenses which would not be made except for the availability of benefits under this plan or for which no charges are made." TIPSA's policy further excludes all "[s]ervices furnished by or for the United States Government or any other government unless payment is legally required." *Id.*

The Indian Health Care Improvement Act requires assumptions that health services provided to a Native American or Alaska Native were provided by a nongovernmental provider, that the individual was required to pay, and that he or she did pay for the services. 25 U.S.C. § 1621e(a). Therefore, services provided by YKHC, as a tribal organization on behalf of the United States, are statutorily removed from TIPSA's exclusions, and coverage exists absent exclusion elsewhere in the policy.

Congress granted tribal organizations an independent right of recovery to the same extent that the individual or a nongovernmental provider would have a right. YKHC has the independent right to file a claim with

---

**15.** As explained *supra,* upon receipt of a claim submitted directly by YKHC, TIPSA will forward the claim to the individual beneficiary, along with a "revocation kit," containing a notice telling the beneficiary that he or she is under no

obligation to pay for the health care services previously provided and that if a claim is filed, premium costs will increase and medical options will be reduced.

TIPSA for health services rendered to Alaska Native beneficiaries to the same extent that the individuals would have had that right.[16] YKHC is statutorily entitled to submit claims *qua* beneficiary pursuant to § 1621e(a). YKHC attains this status statutorily upon providing health services to Alaska Natives insured by TIPSA. If TIPSA could not deny a claim submitted by a beneficiary, then under § 1621e(a), it may not deny a claim submitted by YKHC.

■ In sum, TIPSA has provided no basis to suggest that its claims procedures, either contractually established or otherwise adopted, preclude YKHC's claims. A party bearing the burden of proof on an essential element at trial may not idly resist a motion for summary judgment. *California Arch. Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988). Rather, it is incumbent upon that party to come forth with specific facts to demonstrate some genuine dispute over material facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). There being no question of material fact, summary judgment dismissing TIPSA's affirmative defense is appropriate.

## IV. *EQUAL PROTECTION*

■ TIPSA raises its right to the equal protection of the law afforded by the due process clause of the Fifth Amendment as an affirmative defense and challenges the constitutionality of 25 U.S.C. § 1621e, as amended. TIPSA argues that the United States improperly treats claims against the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS) differently than claims against private insurers. TIPSA bases its argument on an alleged policy statement from IHS stating that it will not bill CHAMPUS for claims resulting from IHS services provided to CHAMPUS beneficiaries.

TIPSA does not challenge § 1621e as violating equal protection on its face, but rather as applied. *See Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Section 1621e would violate equal protection principles if it treats similarly situated classes differently without any rational basis. *Yao v. Immigration and Naturalization Service,* 2 F.3d 317, 321 (9th Cir.1993). To the extent that IHS' treatment of CHAMPUS is relevant to TIPSA's liabilities under a facially neutral statute, the court concludes that CHAMPUS is not similarly situated to TIPSA or·other private insurers that charge premiums for their services.[17] CHAMPUS is a government program for which Congress appropriates funds. 32 C.F.R. §§ 199.1(d) and (e). CHAMPUS does not collect premiums. 32 C.F.R. § 199.1(d). The two are dissimilar. The purpose of § 1621e is to require those that collect premiums in exchange for insuring Native Americans or Alaska Native to honor their obligations. TIPSA's affirmative defense based upon equal protection principles is without merit.

**IT IS THEREFORE ORDERED THAT:**

Plaintiff Yukon–Kuskokwim Health Corporation's Motion for Partial Summary Judgment Regarding the "Statutory Exceptions" to the Right of Recovery Under Section 206 of the Indian Health Care Improvement Act (Docket No. 56) is **GRANTED.** Plaintiff's Motion for Partial Summary Judgment Regarding TIPSA's Defense of Claim Procedures (Docket No. 73) is also **GRANTED.** Defendant Trust Insurance Plan for Southwest Alaska's Motion for Partial Summary Judgment on Affirmative Defense of Plaintiff's Standing (Docket No. 48) is **DENIED.** Defendant's Motion for Partial Summary Judgment on Equal Protection Affirmative Defense of Defendant (Docket No. 47) is also **DENIED.** Plaintiff's Cross–Motion for Par-

---

16. At oral argument counsel for TIPSA repeatedly limited a tribal organization's right of recovery to that right held by a nongovernmental provider of health care. Section 1621e(a) makes clear that Indian tribes and tribal organizations possess the rights of *either* a nongovernmental provider, *or* the individual that received the services against a third party.

17. TIPSA incorrectly classifies itself as similar to CHAMPUS because TIPSA includes local governments and Native associations. TIPSA is a private ERISA trust separate and distinct from its sponsors. *See* Section II.A., *supra.*

tial Summary Judgment as to Equal Protection (Docket No. 52) is **GRANTED.**